No. 27,889.

ELMER BEELER, *Appellee,* v. THE CONTINENTAL CASUALTY COMPANY, *Appellant.*

(265 Pac. 57.)

SYLLABUS BY THE COURT.

1. ACCIDENT INSURANCE — *Notice of Injury — As Soon as Reasonably Possible.* Under the authority of *Beeler v. Continental Casualty Co.,* 121 Kan. 642, 249 Pac. 579, the demurrer of the defendant to the evidence of the plaintiff was properly overruled.

2. SAME—*Instructions.* There was no reversible error in the instructions given.

3. SAME—*Trial—Special Interrogatories.* There was no error in submitting to the jury question No. 3 as set out in the opinion.

4. SAME—*Amount of Recovery.* The verdict of the jury and the judgment rendered thereon were not excessive.

5. JUDGMENTS—*Increasing Judgment at Subsequent Term—Including Interest.* Where the answers of the jury to special questions submitted show that the verdict is too small by the amount of interest that should have been included therein, the court may, at a subsequent term, increase the judgment by including the interest that should have been allowed when the verdict was returned.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed March 10, 1928. Modified and affirmed.

Accident Insurance, 1 C. J. pp. 511 n. 51, 515 n. 78. Judgments, 34 C. J. p. 241 n. 42.

*W. N. Banks, O. L. O'Brien* and *Walter L. McVey,* all of Independence, for · the appellant.

*Chester Stevens,* of Independence, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: Plaintiff recovered a judgment for $2,345 on an accident insurance policy issued by the defendant to the plaintiff. The defendant appeals from the judgment against it. The plaintiff appeals from the judgment of the court refusing to allow interest from the time the defendant was notified of the accident and injury to the plaintiff until the verdict was returned.

This is the second appearance of this case in this court. The former opinion will be found at *Beeler v. Continental Casualty Co.,* 121 Kan. 642, 249 Pac. 579. That appeal was from a judgment in favor of the defendant on its demurrer to the evidence of the plaintiff. The judgment was reversed, and a new trial was directed.

At the close of the evidence for the plaintiff on the trial from which this appeal is taken, the defendant demurred to the evidence of the plaintiff. That demurrer was overruled. Of that order the defendant complains and argues that the question is presented on a set of circumstances which render the former decision of this court uncontrolling. This necessitates a recital of some of the facts shown by the evidence introduced on the second trial. The plaintiff was operating an oil and gas well supply house, and had been so doing for a number of years. On May 8, 1922, while atempting to sell some pipe to a customer, the plaintiff slipped and fell and struck his back on some eight-inch pipe. He got up and continued his work until May 29, when he became ill. On that day, he consulted a physician and was treated by him for biliousness. That treatment was followed for a few days, when the plaintiff again visited the physician, who again examined the plaintiff and again stated that the plaintiff's illness arose from biliousness, and continued to treat him therefor. Shortly thereafter the plaintiff went to another physician, who examined him and stated that he was suffering from malaria, and treated him therefor. The plaintiff did not receive any benefit from the treatment of either of those physicians. After the consultation with the second physician the plaintiff went to Kansas City, Mo., for treatment by physicians at that place. He was there examined; and the physicians there stated that the cause of the

plaintiff's illness was his tonsils, which were somewhat affected. They were removed, but the plaintiff did not improve. He returned to his home at Independence, Kan., where he consulted with and was treated by an osteopathic physician, who stated that there was a slight misplacement of some of the plaintiff's vertebræ. Treatment was given by the osteopath for that condition, and the plaintiff improved slightly, but continued to be ill. Afterward he went to Guthrie, Okla., and was there treated by a chiropractic physician, who stated that there was some misplacement of the vertebræ. The plaintiff improved under that treatment. After a number of months the plaintiff was able to return to his work. When he returned to his work he concluded that the cause of his injury had been his fall on the pipe. He immediately wrote the defendant, notifying it of that fact. That was on October 10, 1923, sixteen months after the accident had occurred. Until that notice was given to the defendant the plaintiff had not attributed his condition to the injury sustained by him in his fall and had not believed that the fall had caused that condition.

The policy on which the plaintiff seeks to recover contained the following provision:

"Written notice of injury on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury. In event of accidental death immediate notice thereof must be given to the company."

The policy also provided that—

"Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice, and that notice was given as soon as was reasonably possible."

1. The defendant contends that the provision of the policy concerning notice was not complied with, and that for that reason the demurrer to the evidence of the plaintiff should have been sustained. While the evidence of the plaintiff on the present trial differed in slight particulars from the evidence introduced on the former trial, yet the facts which that evidence tended to prove are substantially the same as those which the evidence on the former trial tended to prove, so much so that the declaration of law stated in *Beeler v. Continental Casualty Co.*, 121 Kan. 642, 249 Pac. 579, becomes the law of this case. This court there said:

"In an insurance policy which indemnified the holder against accidental injuries, and required the holder to give notice to the insurance company within twenty days after the date of any accident causing an injury to the insured, but where the policy also provided that—

" 'Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible,'

it is held, under the evidence and peculiar circumstances narrated in the opinion, the question whether plaintiff gave notice of his accident and injury as soon as was reasonably possible was one of fact for the determination of a jury and not subject to disposition as a matter of law." (Syl.)

The demurrer to the evidence was properly overruled.

2. The defendant complains of certain instructions. It says:

"No. 7 is erroneous and prejudicial, for the reason that it does not correctly state the facts and assumes to state that plaintiff's injury commenced immediately, when in fact plaintiff admitted both in his petition and his evidence that he went about his business for a period of twenty-one days before he realized that there was anything the matter with him.

"Nos. 11, 12 and 13 are erroneous, as they do not state the law correctly.

"No. 14 is erroneous and prejudicial, as it attempts to single out and point out part of the evidence most favorable to the plaintiff and without reciting the evidence correctly pertaining to the matter."

The instructions complained of cover six printed pages of the abstract. Instruction No. 7 stated the plaintiff's claim concerning his fall and his injury. Instruction No. 11 quoted the part of the policy which concerned total disability and stated the conditions under which total disability would apply. Instruction No. 12 set out the part of the policy concerning partial disability and stated the conditions under which partial disability would apply. Instruction No. 13 defined the terms "immediately," "at once," and "from the date of the accident," and stated the conditions under which the jury could find that the plaintiff had been totally disabled.

Instruction No. 14 recited some of the facts which the plaintiff's evidence tended to prove and then stated to the jury:

"In this connection, you are instructed that whether the plaintiff believed or had reasonable cause to believe that his sickness and illness was the result of said fall or not, are for you to determine under all of the facts and circumstances of this case, and in determining this fact you may take into consideration the state and condition of plaintiff's health at and immediately before the accident or fall, if you find that he sustained such a fall as alleged by him, his conduct and treatment thereafter, the diagnosis of the various physicians and surgeons who examined and treated him, and all other facts

Beeler v. Continental Casualty Co.

and circumstances shown by the evidence which throw any light upon the determination or ascertainment of the cause of his illness, and if you believe and find from the evidence that plaintiff sustained a fall as alleged by him and that said fall was severe, but that at the time he suffered no serious results, but later became ill, that he consulted physicians and surgeons with reference to his illness and the cause thereof, and that plaintiff did not in fact believe until on or about the 10th day of October, 1923, that his illness and suffering had been caused by said fall, and that he acted in good faith, and that under all of these facts and circumstances, he did give notice as soon as was reasonably possible to the defendant, your verdict will be in favor of the plaintiff and against the defendant; and if you do not so find and believe, your verdict will be for the defendant."

No good purpose will be served by further analyzing the instructions. After a careful examination, no reversible error is found in any of them.

3. The defendant says:

"The court by submitting to the jury question 3, led the jury to believe that it didn't make any difference about the notice unless the defendant were in some way prejudiced."

Question No. 3 and the answer thereto read as follows:

"Was the defendant prejudiced in any manner by not receiving notice of plaintiff's claim for indemnity until about the 10th or 12th of October, 1923? A. No."

The defendant issued to the plaintiff a policy of accident insurance. It provided that written notice of injury must be given to the defendant within twenty days after the accident causing the injury, unless it was shown that it was not reasonably possible to give such notice, and that notice was given as soon as it was reasonably possible. The plaintiff suffered an accident. He did not know that he was injured thereby, and did not definitely learn that fact for a long time thereafter. As soon as he learned that he had been injured by the accident he notified the defendant. The court is unable to perceive wherein the defendant was in any way prejudiced by the delay in giving the notice so long as such notice was given according to the terms of the contract. Under the rule declared in *Beeler v. Continental Casualty Co.*, 121 Kan. 642, 249 Pac. 579, it was for the jury to say whether or not notice had been given as required by the policy.

4. The defendant argues that the judgment was excessive and that the court erred in refusing to reduce it. The judgment was rendered for $2,345, which did not include interest. The policy

provided for the payment of a weekly indemnity of $35 during the period of total disability and for the payment of one-half that amount during the period of partial disability. Concerning total disability and partial disability, the jury answered special questions as follows:

"Q. 6. If you find that plaintiff was totally disabled at any time after May 8, 1922, when did such total disability commence and when did it end? A. May 29, 1922, to August 20, 1923.

"Q. 7. If you find that plaintiff was partially disabled, when did such partial disability commence and when did it end? A. May 8, 1922, to August [May] 29, 1922, and August 20, 1923, to September 10, 1923."

The jury found that the plaintiff was totally disabled for sixty-four weeks and partially disabled for six weeks. Sixty-four weeks at $35 a week would amount to $2,240, and six weeks at $17.50 a week would amount to $105, a total of $2,345, the amount of the verdict and judgment.

5. The plaintiff appeals from the refusal of the court to allow interest from October 18, 1923, to January 24, 1927. About October 18, 1923, the defendant received notice of the plaintiff's injury. On January 24, 1927, the verdict of the jury was returned. The defendants filed a motion for a new trial on January 25, 1927, and filed a motion for judgment notwithstanding the verdict on January 26, 1927. The journal entry of judgment shows that those motions were denied on April 19, 1927. On May 10, 1927, the plaintiff filed his motion to be allowed interest from October 18, 1923, to January 24, 1927. The action was tried at the January term of the district court of Montgomery county in 1927. The next term of the district court in that county began on the first Monday in March, 1927, and another term began on the first Monday in May, 1927. The journal entry of judgment contains the following:

"Now on this 4th day of June, 1927, the same being one of the judicial days of the regular May, 1927, term of the above-named court, the above-entitled cause comes on for hearing on a disagreement between the attorneys for the respective parties upon the claim of the plaintiff for interest at the rate of six per cent per annum from the 18th day of October, 1923, to January 24, 1927, in the sum of $459.60, the same to be added to the judgment of $2,345 and aggregating the total sum of $2,805.60 [$2,804.60]; thereupon, the claim of defendant that no judgment was entered in said cause until the 19th day of April, 1927, when the motions of the defendant for judgment in its favor and its motion for new trial were overruled. The plaintiff appears by Chester Stevens, his attorney, and the defendant appears by Banks, O'Brien & McVey, its attorneys, and the court having heard the motion and application of the plaintiff for interest as aforesaid, having heard the motion and application of

the defendant that interest on the $2,345 be not allowed to commence until April 19, 1927, and having examined his minutes and being fully advised in the premises finds that the plaintiff is not entitled to interest prior to the date when the verdict was returned, and that judgment should be entered on the verdict as of January 24, 1927, for $2,345 in favor of the plaintiff and against the defendant, and that said judgment should draw interest at the rate of six per cent per annum from the 24th day of January, 1927; to which ruling adverse to the plaintiff, the plaintiff duly excepted, and to which ruling adverse to the defendant, the defendant duly excepted."

The plaintiff did not file any motion for a new trial. The plaintiff's motion to be allowed interest was not filed until after the term of court at which the verdict rendered had expired, and the succeeding term of court had also expired, and another term of court had commenced.

The action was one to recover money under a contract which stipulated that certain sums should be paid under named conditions. Section 41-101 of the Revised Statutes provides that interest at six per cent shall be allowed for any money after it becomes due. The money which the defendant agreed to pay became due when it was notified of the accident and injury.

Section 60-3007 of the Revised Statutes, in part, reads:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made . . . for mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order."

We quote from *Vail v. School District,* 86 Kan. 808, 809, 122 Pac. 885, as follows:

"The statute (Civ. Code, § 596) authorizes the district court to vacate or modify its own judgments or orders at or after the term, for mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order. It is argued that after the term ended the court lost control of the judgment and that no legal reason existed for setting it aside, and various decisions of this court are cited. In *Clevenger v. Hansen,* 44 Kan. 182, 24 Pac. 61, the record showed that the judgment was entered for a larger sum than the plaintiff was entitled to under his petition and it was held proper for the district court to modify it at a subsequent term. In *Tobie v. Comm'rs of Brown Co.,* 20 Kan. 14, the special findings authorized a judgment for $9.33, and the district court erroneously entered judgment for $129.33, and it was held proper to modify it according to the special findings at a subsequent term. In *Small v. Douthitt,* (Dass. Ed.) 1 Kan. 317, a judgment was held properly corrected at a subsequent term *nunc pro tunc,* a mistake having been made in the recital of the amount in default of which the sale should be made."

In *Clevenger v. Hansen,* 44 Kan. 182, the judgment was obtained

January 29, 1886, and the application to modify the judgment was filed May 9, 1888.

In *Tobie v. Comm'rs of Brown Co.*, 20 Kan. 14, the date of the rendition of the judgment is not shown, but the following language is found in the opinion:

"At the October term, 1875, the court stated to the counsel of the respective parties to the action, that if an application should be made upon the part of the board of county commissioners to reduce the amount of the said judgment of $129.33 to $9.33, as originally asked for in the motion of the board at the August term, the application would be granted. In pursuance of this intimation, at the April term, 1876, the defendants in error filed their written motion and application to have the judgment changed and modified in accordance with the special findings of fact, which was resisted by the plaintiff in error, and upon the hearing, the court at said April term modified the judgment by reducing it to $9.33, as the amount of the recovery for damages, and assessed the costs against the plaintiff in error; and this change or modification of the judgment is complained of." (p. 16.)

In *Seeds v. Bridge Co.*, 68 Kan. 522, 75 Pac. 480, this court said:

"If the special findings are such as to require the entry of a judgment thereon, notwithstanding the general verdict, a judgment entered upon such general verdict is irregular and as such may be set aside at a subsequent term of court." (Syl. ¶ 1.)

In *Cooper v. Rhea*, 82 Kan. 109, 107 Pac. 799, the court declared that—

"Under the provision (Civ. Code, § 568, subdiv. 3; Gen. Stat. 1901, § 5054, subdiv. 3) that a judgment may be set aside at a subsequent term 'for mistake, neglect or omission of the clerk, or irregularity in obtaining' it, a court may vacate a judgment rendered on the pleadings because of a misapprehension as to what allegations they in fact contained." (Syl. ¶ 1.)

These cases are analogous to the one now under consideration. Under these authorities the court had power to make the requested change in the judgment. The plaintiffs were entitled to interest on $2,345 at six per cent from October 18, 1923, to the date of the judgment. That interest is shown by the record to amount to $459.60.

The judgment in favor of the plaintiff is modified by increasing the amount thereof from $2,345 to $2,804.60, and as thus modified it is arffimed.