No. 33,245

ARTHUR LLOYD, *Appellee*, v. WILSON EMPLOYEES' MUTUAL BENEFIT FUND, a Voluntary Association, *Appellant*.

(65 P. 2d 314)

442

Opinion filed March 6, 1937.

*Arthur J. Stanley* and *J. E. Schroeder,* both of Kansas City, for the appellant.

*William R. Baker* and *J. Willard Haynes,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Plaintiff brought this action to recover benefits claimed to be due him by reason of his membership in the defendant association which will be referred to as the Fund. The cause was tried by the court and from a judgment in plaintiff's favor the Fund appeals, the questions presented being whether plaintiff had complied with the constitution and bylaws of the Fund, and whether the trial court erred in not sustaining the Fund's demurrer to plaintiff's evidence, and in the findings of fact and conclusions of law it made.

There is no dispute that the defendant is a voluntary association, limited in its membership to employees of Wilson & Co., Inc., hereafter referred to as the company, and at the times here mentioned operated under a constitution and bylaws, admitted in evidence by agreement. The entire document had twenty-three numbered sections and, as far as need be noticed, provided that the purpose of the Fund was to accumulate funds to provide sick and disability benefits to the members who were limited to employees of the company, it being provided that all employees of the company making application on or before June 15, 1920, should be admitted to membership, irrespective of age and without physical examination. Each member paid into the Fund the sum of twenty cents per week, which was deducted from his weekly pay check from the company. Section 8 provided for medical service and expressly stipulated no medical allowance would be paid on account of injuries arising out of and in the course of regular employment "as such medical attention is provided by the company under the compensation laws." Under this head, it is provided the secretary of the Fund may require a claimant and his attending physician to furnish a specially prepared form in support of his claim, and failure to comply shall be sufficient cause for not honoring the claim. Section 9 provides that any member, who, prior to attaining the age of 65 years, suffers permanent and total disability as the result of illness or accidental injury not

arising out of and in the course of his employment, shall receive a sum equivalent to the amount such member would, at the time, be entitled to as a death benefit, payable in weekly installments of $7.50. Section 11 specifies the death benefits, the amount after membership of five years being $1,000. Section 13, after enumeration of specific instances when no benefits shall be payable, concludes they shall not be payable when claim for benefit is not made within one year from date of disability or death, nor in any event unless an assistant secretary for the member's district shall have been notified. Section 14 provides that when a member shall be discharged by the company his membership shall cease and he shall not be entitled to benefits unless reinstated. Provision for reinstatement is made, and it is then provided:

"No person shall be entitled to any benefit in respect of illness or disability which was not reported before the termination of his employment."

Sections 15 to 19, inclusive, provide for a board of 21 trustees, ten of whom are elected from specified districts, ten of whom are selected by the company, the other trustee being the president of the company, and specify the duties of the board and its officers. The secretary is directed to appoint assistant secretaries in each of the designated districts. Section 22 provides a form of application which provides in part:

"I further agree, that in case of sickness or injury, I will immediately notify the assistant secretary of my district, or cause him to be so notified, and all claims for benefit shall be reckoned from the date of such notification. I will obtain from the physician designated by the Fund, a certificate of disability and present the same to the secretary when making claims for benefits, and the statements of the physician designated by the Fund shall be final; and it is fully understood and agreed upon by me that a failure to conform to any of the above requirements will act as a forfeiture and waiver of all my rights to receive benefits for such time."

As part of his proof, it was incumbent on plaintiff to prove that he had complied with the constitution and bylaws of the Fund, and whether he did or not determines whether the trial court erred in not sustaining the Fund's demurrer to plaintiff's evidence. After the demurrer had been overruled, defendant did not stand on the ruling, but presented its own proof. We therefore review plaintiff's evidence, and such parts, if any, of defendant's evidence as may supply any omissions there may have been in plaintiff's proof.

The plaintiff's proof showed that he was about 52 years old in June of 1932; that over eighteen years before he had been employed

by a firm which ultimately became a part of Wilson & Co.; that originally he tended doors and later became a scaler weighing meat, this being his employment when he was discharged on June 18, 1932. Plaintiff sustained a fall when an infant and had always been crippled, having considerable difficulty in walking and some impairment of speech. He had paid twenty cents a week to the Fund ever since he had been employed. He was discharged on Saturday, June 18, and on the following Monday went to the plant with one Lloyd Boles to see Keller, the assistant secretary of the Fund. Keller told them that plaintiff was discharged because of his disability; that he had to be helped around too much; that at that time Boles, who was a nephew of Lloyd, told Keller they were to see him about Lloyd's insurance, and that Keller refused to pay Lloyd anything. Burns, a brother-in-law of Lloyd, testified that probably a week after Lloyd's discharge he went to the company's plant and called on Dunseth, the superintendent, about Lloyd's discharge, and that Dunseth told him Lloyd had been discharged on account of total disability; that he had got so bad they had to help him up and down. With reference to his physical condition, Lloyd testified that when he got to the scales he could do his work but that he got so he could not climb up and down steps; that when the elevator was there he used it and when it was not there "they would help me"; that in the last six months he had grown weak in his right leg; that he had always been afflicted but got around pretty well until about six months before his discharge; that he knew Doctor Sterrett, the Fund's physician, who had in times past examined him and treated him; that after he got so he could not walk to Doctor Sterrett's office he then consulted Doctor Sanders.

The plaintiff also testified that two or three years before he was discharged he had received benefits of $7.50 per week from the Fund.

On cross-examination he identified his signed application for membership in the Fund. It contains the statement quoted in the bylaws mentioned above.

Doctor Sanders testified that Lloyd was afflicted with spastic paralysis which had been growing gradually worse, and on June 22, 1932, it had progressed to a point where he could hardly walk, and that the paralysis had resulted in an internal complaint and had affected his ability to control his bowels. He stated spasticity is

a condition where the muscles are paralyzed or atrophied; that Lloyd was getting worse and his right hip was affected and one leg was shorter than the other; that in his opinion Lloyd could not do any physical work and his condition was permanent. Defendant's demurrer was based on the claim noted: that Lloyd had not complied with the constitution and bylaws in giving notification of his disability while still an employee of Wilson & Co.; that he knew of his disability at least six months before his discharge, and that he had not furnished the required certificate of disability. With reference to the last part of the contention, if it be held plaintiff's proof was not sufficient, we note that defendant called as its witness Doctor Sterrett, the physician of the Fund, who testified he knew plaintiff during all of his employment; that he used to pick him up coming to the plant in the morning and had occasion to see him walking about the plant; that his condition is progressively worse; that he is more feeble; that he has a disease of the brain and spinal cord; that he has atrophy of the muscles, a spastic condition; that his mental condition is good, but his muscular or physical condition is not so good, and that four years ago he was in better condition than now (perhaps referring to the date of trial in April, 1936).

The trial court took the matter under consideration and later rendered judgment for plaintiff as prayed for. Within three days defendant filed a request the trial court make findings of fact and conclusions of law, and its motion for a new trial. On a later day the trial court denied the motion for a new trial and made and filed its findings of fact and conclusions of law, viz.:

### "FINDINGS OF FACT

"1. The defendant, Wilson's Employees' Mutual Benefit Fund, is a voluntary association of individuals, one of the purposes of which is to create, accumulate and maintain a fund with which to provide for its members in case of their illness or disability.

"2. From June 15, 1920, until June 18, 1932, the plaintiff in this case, Arthur Lloyd, was a member in good standing of said Wilson's Employees' Mutual Benefit Fund.

"3. That on June 18, 1932, plaintiff was fifty-two years of age.

"4. That prior to June 18, 1932, plaintiff had been an employee of Wilson & Company, and its predecessor, for more than seventeen years; and on June 18, 1932, he was permanently discharged from the service of Wilson & Company because of permanent disability as the result of illness not arising out of and in the course of his regular employment.

"5. That on or about June 20, 1932, an assistant secretary of Wilson's Em-

ployees' Mutual Benefit Fund, C. C. Keller, was notified and knew that the plaintiff had been discharged from the service of Wilson & Company, and that said plaintiff was discharged because he was at that time permanently disabled by illness as above stated.

"6. That the constitution of said Wilson's Employees' Mutual Benefit Fund provides in part as follows:

" 'Any member who, prior to attaining the age of sixty-five (65) years, suffers a permanent and total disability as a result of illness, or accidental injury not arising out of and in the course of his regular employment, shall receive in lieu of death and funeral benefits a sum equivalent to the amount to which such member would, at the time, be entitled as a death benefit, which sum shall be payable in weekly installments of $7.50.'

"7. That the amount of death benefit payable after a membership of five years was $1,000."

### "Conclusions of Law

"The plaintiff in this case is entitled to a judgment against the defendant, Wilson's Employees' Mutual Benefit Fund, in the total sum of $1,000, payable in weekly installments of $7.50, with interest at six percent per annum on each installment from the date it becomes due until paid; that the first of said weekly installments of $7.50 became due on June 25, 1932."

Appellant contends that, under the constitution and bylaws, plaintiff's membership in the Fund ceased when he was discharged on June 18, 1932, and that not having reported his disability as required by bylaw 14 quoted above, he cannot recover. It is also contended that he was disabled prior to his discharge, but made no report thereof. It will be observed from what has been stated heretofore that the Fund is made up of employees of Wilson & Co., Inc., and that while the employees are represented on its board of trustees, the control is retained by the company's designation of a majority of the board. The purpose of the Fund is to provide medical attention and financial benefits to the members arising from sickness or injury not compensable under the workmen's compensation act. Regardless of what the physical condition of the claimant actually was, or what he himself thought of it, it is undisputed that on June 18, 1932, he was permanently discharged. While it was disputed, there was evidence that he was discharged because he was permanently disabled. That happened on Saturday, and on the following Monday plaintiff went to Keller, the assistant secretary of the Fund, and the proper person to whom application should be made, and asked for his benefits. At that time his demand was refused, Keller's statement, according to the witness Boles, being:

"Arthur was discharged and there was not any possible chance for him to get anything through the insurance."

It will be noted the refusal was placed on the ground of discharge, and not because of failure to produce a certificate of disability. Appellant says this requirement is not harsh and unreasonable, but is necessary for the protection of the Fund. If this argument is good, logically followed it means that whenever the company apprehended an employee might have a claim, if it discharged him before he reported his disability, the Fund would be without liability. We do not believe the bylaws were intended to have any such result or that they compel a conclusion that where, without notice to him, an employee is permanently discharged for disability, he does not have opportunity to make claim. It is conceded by all parties that plaintiff suffered from physical disability, varying in degree, during all the time he was employed by the company, and that while his condition became progressively worse, he did continue to work. While it is disputed, there is evidence that on June 18, 1932, without previous notice, he was discharged, the reason assigned later being that he was totally disabled. The first working day after his discharge he made claim. As the various happenings of this case occurred, it is obvious that plaintiff, while an undischarged employee, and while still a member in good standing of the Fund, never had an opportunity to make claim for benefits based on a claim that he was totally disabled. Although not strictly in point, see *Hawthorne v. Protective Association,* 112 Kan. 356, 210 Pac. 1086; *Beeler v. Continental Casualty Co.,* 121 Kan. 642, 249 Pac. 579; id., 125 Kan. 441, 265 Pac. 57.

We are of opinion that it is not necessary for us to say that bylaw 14 is unreasonable, but only that under the circumstances of this case it cannot be enforced according to its literal terms, that where the company and the Fund are as closely allied as they are here, the company may not, without notice, discharge an employee on the ground he is physically disabled when up to that time he has been constantly employed, and then have the Fund deny liability because he did not, prior to his discharge, report that he was permanently physically disabled, and especially must this be true where, as here, he immediately thereafter made demand on the Fund for the benefits due him.

It is also contended by appellant that the plaintiff knew he was totally disabled for some time before he was discharged and he was therefore bound to give notice. Of course he knew he was not physically perfect; so did the company; so did the Fund. But the

fact he worked up to the time he was discharged is some indication that the plaintiff did not consider himself unable to perform his usual duties. Where, as in this case, plaintiff suffers from a disease which makes his physical condition progressively worse, who is to be the judge of the exact time when partial ability ceases and total disability commences? If the company is to be the judge and, without notice to the employee, determines he is disabled and discharges him, does that determination and discharge bind the employee in all aspects unfavorable to him, and preserve the company and the Fund in all aspects favorable to it?

The argument that plaintiff did not furnish a certificate of the Fund's physician and he is therefore not entitled to recover is not persuasive. It is true that section 22 of the bylaws specifies a form of application in which the applicant agrees to furnish the certificate of the physician designated by the Fund, and that plaintiff signed such an application. In the bylaws elsewhere, the only provision for such a certificate is in section 8 where, in connection with medical services, it is provided that such certificate will be furnished when required. The two provisions are not consistent in all their parts. But even if it be assumed the bylaws required plaintiff to furnish such certificate, there are four reasons why plaintiff's failure to do so may not be relied on by the Fund: *First*, when demand for benefits was refused by the secretary of the Fund, it was on another and different ground. *Second*, the physician of the Fund was called, and his statement of plaintiff's condition was in accord with that of plaintiff's personal physician and not contradictory thereof. Apparently, had plaintiff been told by the secretary he needed the certificate of any particular physician it could have been procured. *Third*, the company discharged plaintiff because he was permanently physically disabled; the Fund ought not now be permitted to claim otherwise. *Fourth*, there is no showing that the Fund's rights have in any manner been prejudiced because the claimed certificate was not furnished. From what has been said, it follows that plaintiff proved that he substantially complied with the constitution and bylaws of the Fund, and that the trial court did not err in overruling the Fund's demurrer to plaintiff's evidence.

Appellant's argument that the trial court erred in its findings of fact and conclusions of law thereon, is directed principally at finding No. 5. Insofar as the contention is made that the facts as found are incorrect, we can only say that there was testimony to

the contrary but, as shown above, there was testimony which supported the trial court's finding. It is conceded that finding No. 6 is correct, but it is argued that it is wrongly applied. This contention is based on the claim that under other provisions of the by-laws plaintiff cannot recover until he shows compliance with the provisions with reference to a physician's certificate. What has been said in disposing of the demurrer will not be repeated. The trial was by the court, and had it included other provisions of the bylaws in its findings, a different result would not have followed. It is also argued the discharge by the company did not bind the Fund. We do not find it necessary to discuss the question. Under the facts, the Fund was promptly notified of the action of the company in discharging plaintiff. The purpose of the Fund was to provide benefits to the employees of the company. Plaintiff, having shown substantial compliance with the requirements of the Fund, was entitled to the relief granted.

The judgment of the trial court is affirmed.