No. 40,595

DEARBORN MOTORS CREDIT CORPORATION, *Appellee,* v.
A. S. NEEL, *Appellant.*

(313 P. 2d 243)

Opinion filed July 3, 1957.

*Archie T. MacDonald,* of McPherson, argued the cause, and *Russ B. Anderson,* of McPherson, was with him on the briefs for appellant.

*Roy L. Rogers,* of Wichita, argued the cause, and *H. E. Pat Healy,* of Wichita, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from an order vacating a judgment in favor of defendant appellant, A. S. Neel, rendered upon his motion for judgment on the pleadings in an action by Dearborn Motors Credit Corporation to recover money under a written purchase agreement.

For identification of the parties, defendant appellant A. S. Neel will be referred to as Neel; plaintiff appellee Dearborn Motors Credit Corporation will be referred to as Dearborn, and defendant W. P. Astle, d/b/a Astle Tractor, will be referred to as Astle.

The facts pertinent to this controversy are summarized as follows: On March 12, 1954, Astle sold Neel a Ford diesel tractor for which Neel agreed to pay a deferred time balance of $1959.90 in three equal installments of $653.30 each, commencing December 12, 1954, except the final installment which was to be the amount then due and unpaid. Neel agreed that Astle might assign and discount the contract to Dearborn. For a valuable consideration Astle assigned the purchase agreement and upon Neel's default in payment Dearborn commenced the present action by filing its verified petition to recover the total of the deferred time balance of $1959.90 then due and unpaid.

On September 20, 1955, Neel filed a motion to make Astle an additional party defendant, which was allowed, and on March 5, 1956, Astle filed an entry of appearance and waiver of summons.

On February 23, 1956, Neel filed an answer and verified cross-petition against Dearborn and Astle claiming damages for misrepresentation and fraud as to the tractor. In his answer Neel denied indebtedness to Dearborn and alleged that the purchase agreement was usurious. In his cross-petition Neel alleged that Astle and his salesman represented to him the tractor was new; that the representation was false and knowingly and fraudulently made by Astle and his salesman for the purpose of defrauding and inducing him to purchase the tractor, and that he relied upon the representation; that Dearborn "knew or should have known of such representation and its falsity and as assignee of the purchase agreement attached to plaintiff's petition, is charged with knowledge thereof"; that in fact the tractor was not new, but had been used by Astle as a demonstrator on several plowing demonstrations prior to its being sold to Neel; that various mechanical defects developed and the tractor failed to operate properly and would not produce adequate speed for plowing and farm work; that the fuel injection system did not operate properly and the motor used excessive oil; that attachments were to have been furnished with the tractor, which were not furnished, by reason of which Neel had to hire work done; that the tractor was worth $300 rather than $2786 for which it had been sold to him; and, that as a result he had

received total damages in the sum of $3004.60. The prayer was for judgment against Dearborn and Astle and each of them in that amount.

On September 14, 1956, Astle filed his answer to Neel's cross-petition, which expressly denied the fraud alleged by Neel; denied Neel's allegation that the tractor failed to operate properly, and that if Neel had difficulty with the tractor it was by reason of his own faults and efforts to properly operate it. He alleged that Neel ordered the tractor January 4, 1954, and agreed the tractor should be used by Astle as a demonstrator until delivery to Neel in March 1954; that he and his representatives co-operated with Neel out of all proportion in an effort to satisfy Neel with the tractor, but that Neel refused and did not intend to be satisfied with it. His prayer was that Neel take nothing by his cross-petition.

On September 15, 1956, the day following the filing of Astle's answer, which presented a material issue of fact, Neel filed his motion for judgment on the pleadings against Dearborn, but did not ask for judgment against Astle. The affidavit of Neel's counsel, Archie T. MacDonald, filed September 21, 1956, recited that on September 15, 1956, he deposited in the United States mail true copies of the motion for judgment on the pleadings, properly addressed to counsel for Dearborn: Warnick, Phares, Norton and Healy, Wichita, Kansas, and to counsel for Astle: Kenneth Speir, Newton, Kansas. Accompanying each copy of the motion was a letter addressed to counsel for Dearborn stating that Neel intended to present his motion for judgment on the pleadings to the judge of the district court on September 21, 1956, at 9:30 a. m. or as soon thereafter as the motion might be heard.

On September 21, 1956, neither counsel for Dearborn nor Astle appeared. In presenting his motion for judgment on the pleadings counsel for Neel did not call the district court's attention to the answer filed by Astle the previous day to Neel's cross-petition and the material issue of fact presented therein, but instead reminded the district court that only recently it had overruled Astle's demurrer to Neel's answer and cross-petition. Upon consideration of Neel's motion for judgment on the pleadings the district court found that Neel was entitled to judgment against Dearborn on his cross-petition in the sum of $3004.60; that Dearborn was entitled to judgment against Neel in the amount of $1959.90, and that Neel should have

judgment against Dearborn for the difference in those amounts. Accordingly, judgment was entered in favor of Neel and against Dearborn for $1044.70 with interest at 6 percent until paid.

Counsel for Neel did not submit the journal entry of judgment for approval to counsel for either Dearborn or Astle prior to filing it and did not file the journal entry until October 1, 1956. Counsel for Dearborn did not know of the entry of judgment against their client until they received a copy of the journal entry of judgment forwarded to them on October 1, 1956.

Upon being advised that judgment had been entered against their client, counsel for Dearborn filed a motion to vacate that judgment upon the following grounds: (1) That notice of presentation of the motion for judgment was not given as provided by law; (2) that the notice did not provide sufficient time and did not stand for hearing at the time stated; (3) that through clerical error in their office, Mr. Pat Healy, who was handling the Dearborn litigation, was not aware of the filing of the motion or of the date of its hearing; and (4) that the judgment against Dearborn was void as not supported by the record and pleadings.

On November 2, 1956, Dearborn's motion to vacate was heard. The parties conceded that September 21, 1956, was a regular motion day of the April 1956 term of the district court of McPherson County and that the October 1956 term of that court commenced October 1, 1956; that September 15, 1956, was Saturday, and that on the following Monday, September 17, 1956, Mr. MacDonald's unregistered letter was received in Mr. Healy's law office in Wichita, but due to a clerical error and an inexperienced secretary, that letter and notice was not called to his attention until September 21, 1956, the day of the hearing of Neel's motion for judgment on the pleadings. Upon consideration of the record and the statements of counsel, the district court sustained Dearborn's motion to vacate and the judgment rendered September 21, 1956, and filed October 1, 1956, against Dearborn was vacated pursuant to G. S. 1949, 60-3007, *Third,* for irregularity in obtaining it. From that order Neel has appealed.

Was the judgment against Dearborn irregularly obtained?

Rules 44 and 45 of the supreme court relating to procedure of district courts (174 Kan. XVIII, effective July 1, 1953, printed in G. S. 1949 and given section No. 60-3827 for convenience) read:

"No. 44. Counsel filing a motion or demurrer or pleading subsequent to the petition shall, on the day the same is filed, deliver or mail a copy thereof to counsel of record for all adverse parties.

"No. 45. All motions and demurrers shall stand for hearing at the first motion day following the fifth day after the filing of the same and service of copy, as provided by Rule 44; but this rule shall not be construed as preventing an earlier hearing upon notice given as provided in the code of civil procedure."

Neel contends that all procedural steps essential to obtaining the judgment were completed by him prior to its rendition September 21, 1956. He maintains that five full days intervened between the filing of his motion for judgment on the pleadings on September 15, 1956, and its hearing at the first motion day on September 21, 1956, in compliance with Rule 45, and that service of that motion was completed on September 15, 1956, in compliance with Rule 44 when he mailed the copy and the letter of transmittal to counsel for all adverse parties advising the motion would be heard September 21, 1956. He cites and relies upon *Phelps v. Schmuck*, 151 Kan. 521, 100 P. 2d 67, and asserts that Dearborn was not relieved from legal effects following the filing of such motion upon a showing that its counsel did not receive a copy mailed to him until the day the motion was heard.

Dearborn argues there was a want of adherence to established rules of procedure in obtaining the judgment since Rule 45 provides that motions shall stand for hearing at "the first motion day following the fifth day after the filing of the same and service of copy, as provided by Rule 44"; that Rules 44 and 45 contemplate service of copy upon counsel of record for all adverse parties five full days prior to the first motion day after its filing, which period is computed only from the time the copy is received from counsel filing and mailing it, or if not received, then from the time when it should have been received, calculated from the date of mailing to the date of delivery in the usual and regular course of mail; that based upon such computation, only three full days intervened between September 17, 1956, when a copy of Neel's motion and the transmittal letter were received in Mr. Healy's office, and September 21, 1956, when judgment was entered against it, consequently, a deviation of procedure prescribed by Rule 45 resulted, and the judgment was, therefore, irregularly obtained.

G. S. 1949, 60-3007, reads in part:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made:

. . .

"*Third.* For mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order."

This court has previously held that the word "irregularity" as used in the above quoted statute does not apply merely to acts of the clerk or other administerial officers, but must be given a broad enough meaning to cover a case where the court has acted upon an erroneous understanding of the facts. (*Small v. Douthitt,* 1 Kan. 317; *Tobie v. Comm'rs of Brown Co.,* 20 Kan. 14; *Cooper v. Rhea,* 82 Kan. 109, 111, 107 Pac. 799; *Bank v. Ross, Ex'x,* 90 Kan. 423, 133 Pac. 538; *The State, ex rel., v. Light, Heat and Power Co.,* 112 Kan. 482, 212 Pac. 86; *Burris v. Reinhardt,* 120 Kan. 32, 242 Pac. 143; *Beeler v. Continental Casualty Co.,* 125 Kan. 441, 445, 265 Pac. 57.)

In *Babb v. City of Wichita,* 172 Kan. 416, 241 P. 2d 755, we defined "irregularity" as used in the statute as follows:

"An 'irregularity' within the meaning of G. S. 1949, 60-3007, *Third,* authorizing vacation of a judgment for irregularity in obtaining judgment, is the want of adherence to some prescribed rule or mode of proceedings; and it consists either in omitting to do something that is necessary for the due and orderly conduct of a suit, or doing it in an unreasonable time or improper manner." (Syl. ¶ 2.)

Those cases are authority to a district court to vacate or modify a judgment or order at or after the term in which it was made where the court acted upon an erroneous understanding of the facts, or where there was a want of adherence to some prescribed rule or mode of procedure which consists either in omitting to do something that is necessary for the due and orderly conduct of a suit, or doing it in an unreasonable time or improper manner.

As previously indicated, Neel relies principally upon *Phelps v. Schmuck,* supra. We do not believe that case controls the precise question here presented, *i. e.,* what is the proper method of computing the five-day period provided in Rule 45—the date the motion is filed and a copy placed in the United States mail for delivery to counsel for all adverse parties, or, the date the copy is received from counsel filing and mailing it? While *Phelps v. Schmuck,* supra, is authority that the filing of a pleading and the enclosure of a copy thereof in a stamped envelope addressed to counsel for all adverse parties is compliance with Rule 44 that the copy was duly served notwithstanding counsel for all adverse parties did not receive it, there was nothing said in that opinion as to the proper method of computing the five-day period provided in Rule 45. Unlike the question in *Phelps v. Schmuck,* supra, here it is conceded that Mr. Healy's office received Mr. MacDonald's

letter September 17, 1956, and we regard it as of no consequence that Mr. Healy was personally unaware of its delivery. The copy of that motion and transmittal letter were received in the office of his law firm and its members are presumed to have had knowledge of their purport from the time of receipt on September 17, 1956.

This opinion could be unduly extended by setting forth reasons as to the proper method of computing the five-day period provided in Rule 45, but suffice it to say we think sound reason exists to hold that the proper method of computing the five-day period is to commence the same on the date counsel of record for all adverse parties receives a copy of the motion through the United States mail from counsel filing and mailing it, rather than the date such copy is placed in a stamped envelope addressed to counsel of record of all adverse parties and deposited in the United States mail, and if such copy is not received in the usual and regular course of mail, then such period is computed from the date it should have been received, calculated from the date of mailing to the date of delivery in the usual and regular course of mail.

The record before us establishes that counsel for Dearborn did not receive a copy of Neel's motion for judgment on the pleadings and the letter of transmittal five full days prior to September 21, 1956, thus there was a want of adherence to the prescribed rule or mode of procedure provided in Rule 45, which resulted in the entry of judgment against Dearborn in an irregular manner, and the district court properly sustained Dearborn's motion to vacate that judgment pursuant to G. S. 1949, 60-3007, *Third,* as being irregularly obtained.

We have fully examined the record and find no error. The order of the district court vacating the judgment rendered against Dearborn September 21, 1956, was properly entered, and that order is affirmed.

It is so ordered.

SCHROEDER, J., not participating.

PRICE, J., concurs in the result.

FATZER, J. (dissenting): I dissent from ¶¶ 2 and 3 of the syllabus and the corresponding portions of the majority opinion. In my judgment, counsel for Dearborn was properly served with notice of Neel's motion for judgment on the pleadings September 15, 1956,

when Neel's counsel filed that motion and duly enclosed a copy together with his letter of transmittal in a stamped envelope addressed to counsel of record for all adverse parties and deposited the same in the United States mail at McPherson (*Phelps v. Schmuck*, 151 Kan. 521, 100 P. 2d 67). Rule 45 of this court states that a motion shall stand for hearing at the first motion day following the fifth day after the *filing* of the same and *service of copy* as provided in Rule 44. Rule 44 of this court provides that counsel filing a motion shall, on the day the same is *filed, deliver* or *mail* a copy to counsel of record for all adverse parties. Clearly, those rules emphasize the *filing* of the motion and *service of copy* on the date the same is filed, by personal delivery or by mailing a copy to counsel of record for all adverse parties.

In my opinion counsel for Neel complied with those rules on September 15, 1956, and the period when Neel's motion stood for hearing should be calculated from that date. In other words, five full days elapsed between the service of copy of that motion on September 15, 1956, and the entry of judgment on September 21, 1956.

With respect to when service of a pleading is complied with, we held in *Phelps v. Schmuck*, supra:

"Rule 44 of this court, which requires that counsel filing a pleading subsequent to the petition 'shall, on the day the same is filed, deliver or mail a copy thereof to counsel of record for all adverse parties,' is complied with where counsel duly enclose a copy of the pleading filed in a stamped envelope addressed to counsel of record for the adverse parties and deposit the same in the United States mail. The adverse party is not relieved from legal effects following the filing of such pleading on a mere showing her counsel did not receive the copy mailed to him." (Syl. ¶ 1.)

The rule announced in that holding is applicable to motions and demurrers.

While counsel of record for Neel failed to call the district court's attention to the material issue of fact raised by Astle's answer, which rendered the motion for judgment on the pleadings improper (*Buechner v. Trude*, 175 Kan. 572, 574, 266 P. 2d 267), the judgment rendered was, from that standpoint, erroneous and could only be corrected upon appeal. But, Dearborn took no appeal.

I would reverse this case on the grounds that judgment was properly entered September 21, 1956. However, I am of the opinion that the judgment rendered against Dearborn in the amount of $1,044.70 was void as being beyond the issues of the pleadings since Neel's

cross-petition failed to allege a cause of action against Dearborn for affirmative fraud. Judgment was rendered against Dearborn on the basis that it "knew or should have known" of the fraud Neel alleged was committed by Astle and his salesman. There were no allegations in Neel's cross-petition that Dearborn conspired with Astle to defraud him, or that Dearborn participated in the fraud, or that Astle was Dearborn's agent to commit the fraud. Consequently, the mere allegation that Dearborn "knew or should have known" of the fraud perpetrated was insufficient to raise a justiciable issue against Dearborn (37 C. J. S., Fraud, § 61 a, p. 346; *Hewey v. Fouts*, 92 Kan. 268, 140 Pac. 894, 8 JBK 396), and a judgment rendered outside of issues before the court is void (*Gille v. Emmons*, 58 Kan. 118, 48 Pac. 569; *Southern Kan. Stage Lines v. Webb*, 141 Kan. 476, 41 P. 2d 1025).

The written purchase agreement was a nonnegotiable instrument (*General Motors Acceptance Corp. v. Davis*, 169 Kan. 220, 218 P. 2d 181) since title to the tractor remained in the seller until paid for. Dearborn took that contract subject to any defenses which might be asserted by Neel against Astle. In view of those facts, it was proper for Neel to use the fraud alleged against Astle and his salesman as a defense against Dearborn's claim against him, and the judgment entered in favor of Neel offsetting the amount of Dearborn's claim was properly entered.

WERTZ, J., concurs in the foregoing dissent.