No. 79,825

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, *Plaintiff/Appellee*, v. FEDERAL DEPOSIT INSURANCE CORPORATION, as successor in interest to RESOLUTION TRUST CORPORATION, as receiver for PIONEER SAVINGS AND LOAN ASSOCIATION, *Defendant/Appellant*.

(957 P.2d 357)

Opinion filed April 17, 1998.

*Gregory E. Gore*, counsel, Federal Deposit Insurance Corporation, argued the cause, and *Ann S. DuRoss*, assistant general counsel, *Roberta Clark*, acting senior counsel, and *Jerome A. Madden*, counsel, all of Washington, D.C., and *Patricia A. Reeder*, of Woner, Glenn, Reeder & Girard, P.A., of Topeka, were with him on the briefs for appellant.

*Thomas W. Rynard*, of Craft Fridkin & Rhyne, of Kansas City, Missouri, argued the cause, and *Kenton E. Snow*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This case is before the court on a question certified by the United States Court of Appeals for the Tenth Circuit pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* The United States District Court granted summary judgment in favor of National Union Fire Insurance Company (National Union), which issued fidelity bonds to Pioneer Savings and Loan Association (Pioneer), and against the Federal Deposit Insurance Corporation (FDIC), which by that time had succeeded to the interest of the Resolution Trust Cor-

poration (RTC), receiver for Pioneer. After FDIC's appeal had been briefed and argued in the Tenth Circuit Court of Appeals, Judge Wade Brorby, Circuit Judge presiding, submitted the following question of state law to this court for an answer: Does the failure by an insured to provide a proof of loss within the time limit provided by a fidelity bond of the type involved here justify denial of coverage under the bond without the insurer showing that it has been substantially prejudiced by the untimely proof of loss?

The following undisputed facts are taken from the Tenth Circuit Court of Appeals' order submitting the certified question to this court:

"(National Union) issued two fidelity-discovery bonds to Pioneer Savings & Loan (Pioneer). The first bond covered the period from July 1, 1991 to July 1, 1992; the second covered the period from July 1, 1992 to July 1, 1993. [Citation omitted.] The fidelity bonds insured against dishonest or fraudulent acts committed by employees of the insured. [Citation omitted.] As discovery bonds, they covered only losses discovered during the coverage period. [Citation omitted.] National Union's bonds required that notice of loss be provided 'at the earliest practicable moment, not to exceed 30 days,' after discovery of the loss and that proof of loss with full particulars be provided within six months after such discovery."

National Union filed a declaratory judgment action in the United States District Court, and the district court granted National Union's motion for summary judgment. *Nat. Union Fire Ins. Co. v. Resolution Trust Corp.*, 923 F. Supp. 1402, 1404 (D. Kan. 1996). It held that RTC's late filing of the proof of loss barred its recovering under the fidelity bonds. 923 F. Supp. at 1408. FDIC appealed from the entry of summary judgment against it.

The United States District Court stated that this was an issue of first impression in that "Kansas courts have not addressed whether the notice-prejudice rule which applies to notice of loss provisions of a fidelity bond would also apply to the bond's proof of loss requirement." 923 F. Supp. at 1407. The federal district court's consideration began with the premise that the notice-prejudice rule, as first applied in Kansas courts, stated that it was necessary for an insurer to demonstrate that it had been substantially prejudiced by the delay in order for the insurer to avoid coverage on the ground that the insured did not give notice of loss within the time period

specified in the policy. Soon this court decided that the rule applied to notice provisions in fidelity bonds as well as in insurance contracts. *School District v. McCurley*, 92 Kan. 53, 142 Pac. 1077 (1914). Then, according to the district court, when this court was called on to decide whether the rule applied to proof of loss provisions in insurance contracts as well as to notice of loss provisions in insurance contracts, it declined to extend the rule. 923 F. Supp. at 1407. The federal court reasoned that the courts of this state would treat the proof of loss provisions the same whether in insurance policies or in fidelity bonds. Thus, the federal court concluded that this court would not apply the notice-prejudice rule to proof of loss provisions.

Here is the federal court's discussion:

"As a general rule, Kansas courts apply the notice-prejudice rule to notice of loss provisions in both insurance contracts and fidelity bonds. *See, e.g., School Dist. No. 1 v. McCurley*, 92 Kan. 53, 142 P. 1077 (1914) (late notice under contractor's surety bond did not defeat recovery absent showing of prejudice). Defendant argues that the notice-prejudice rule also applies to a proof of loss notice provision. The court disagrees.

"Kansas courts have not extended the notice-prejudice rule to cover noncompliance with proof of loss provisions in insurance contracts. *See, e.g., Bowling v. Illinois Banker's Life Ass'n*, 141 Kan. 377, 41 P.2d 1012 (1935); *Brown v. Great American Ins. Co. of N.Y.*, 170 Kan. 281, 224 P.2d 989 (1950) (insurer rightfully denied coverage after insured failed to comply with insurance contract requirement that he submit a proof of loss within sixty days of loss); *Lyon v. Kansas City Fire & Marine Ins. Co.*, 176 Kan. 411, 271 P.2d 291 (1954) (insurer could deny coverage for insured's noncompliance with proof of loss provision of insurance contract). In *Lyon*, 271 P.2d at 294, the Kansas Supreme Court stated that compliance with an insurance contract's proof of loss requirement is a condition precedent to the insured recovering under the contract. Absent a waiver of the proof of loss requirement, an insured's failure to timely submit a proof of loss statement permits the insurer to deny coverage without showing that the delay caused it substantial prejudice. *Id.*" 923 F. Supp. at 1407.

The federal court concluded that the condition-precedent analysis used by this court for the proof of loss provision in an insurance contract in *Lyon v. Kansas City Fire & Marine Ins. Co.*, 176 Kan. 411, 271 P.2d 291 (1954), also would be applied to a proof of loss provision in a fidelity bond. 923 F. Supp. at 1407. Thus, the notice-prejudice rule would not be applied to a proof of loss provision in

fidelity bonds: "Under Kansas law . . . defendant's failure to submit Pioneer's proof of loss statement within the required time was a condition precedent to recovering for Pioneer's losses under the bond. Thus, plaintiff may deny coverage under the fidelity bond for defendant's noncompliance with the bond's proof of loss requirements." 923 F. Supp. at 1408.

In the federal court, FDIC argued that the analysis for fidelity bonds need not run parallel to that for insurance contracts. In particular, FDIC contended that instead of applying the proof of loss rule from *Lyon* to the proof of loss requirement in a fidelity bond, Kansas courts would extend the notice-prejudice rule to the fidelity bond's proof of loss deadline. The federal court rejected the argument on the ground that it blurred the distinction between a bond's notice of loss and proof of loss provisions. 923 F. Supp. at 1407-08.

FDIC's other argument posited a distinction between the functions of a bond issuer and an insurer. It, too, was rejected by the federal court:

"Defendant further argues that Kansas court decisions on insurance contracts are not analogous to the instant action because the issuer of a fidelity bond is not the equivalent to the insurer of an insurance contract. The court notes that this distinction bears no impact on its analysis. Under Kansas law, a surety for a fidelity bond functions in a capacity similar to that of the insurer under an insurance contract. *See Republic County v. United States Fidelity & Guaranty Co.*, 96 Kan. 255, 258, 150 P. 590 (1915) (the bonds that a surety issues 'are to be interpreted to accomplish indemnity against loss sustained'). Like an insurer, a bonding company is a compensated surety that indemnifies the insured for covered losses. Thus, the court concludes that plaintiff functions in a capacity similar to that of an insurer." 923 F. Supp. at 1408.

The parties' arguments to this court roughly follow those considered by the federal district court. National Union urges the court to pattern its decision in this case on the insurance contract cases in which the notice-prejudice rule was not applied to the proof of loss provisions. FDIC would distinguish the insurance contract cases relied on by the federal court and by National Union. It urges the court to perpetuate a line of Kansas cases in the "modern trend," holding that an untimely proof of loss will not defeat coverage unless there is an express forfeiture provision in the bond or

policy or the carrier has demonstrated substantial prejudice on account of the late submission. National Union maintains that the "modern trend" is to treat both notices and proofs of loss as conditions precedent to recovery.

We have seen that there are two sets of variables featured in the discussions—insurance/fidelity bond and notice of loss/proof of loss. At various times and between the parties, the elements of the sets are treated as if they occupy four separate and distinct lines of cases: insurance-notice of loss, insurance-proof of loss, fidelity bond-notice of loss, and fidelity bond-proof of loss. What a review of Kansas cases suggests, instead, is that differences in the rationales of various cases more likely may be accounted for by what issues were raised and adjudicated in individual instances than by the variables identified by the parties to this action. As will be discussed in the following paragraphs, review of pertinent authorities reveals that currently there is no legally significant distinction drawn between an insurance contract and a fidelity bond. The other distinction, that between notice of loss and proof of loss, is not sharply drawn and no sound basis appears for making it the deciding factor.

Insurance/Bond. In reviewing the early cases cited by the parties and the federal district court, it seems clear that the historical distinction between an insurance contract and a bond arose at a time when the term "bond" often referred to an arrangement without consideration—an accommodation bond. In *School District v. McCurley*, 92 Kan. at 56-57, the court stated:

"There are . . . numerous authorities that a surety for hire, an insurer (as the appellant is in this case), is not entitled to the rule of *strictissimi juris*. In *Guaranty Co. v. Pressed Brick Co.*, 191 U.S. 416, it was said:

'The question involved is whether the ordinary rule that exonerates the guarantor, in case the time fixed for the performance of the contract by the principal be extended, applies to a bond of this kind executed by a Guaranty Company, not only for a faithful performance of the original contract, but for the payment of the debts of the principal obligor to third parties. . . . The rule of *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation, which has under-

taken for a profit to insure the obligee against a failure of performance on the part of the principal obligor.' (pp. 423, 426.)

"Whatever may be the rule elsewhere, the latter rule is well settled in this state. (See *Hull v. Bonding Co.*, 86 Kan. 342, 120 Pac. 544; *Medical Co. v. Hamm*, 89 Kan. 138, 130 Pac. 650; *Lumber Co. v. Douglas*, 89 Kan. 308, 131 Pac. 563; *The State v. Construction Co.*, 91 Kan. 74, 136 Pac. 905.)

"In *Lumber Co. v. Douglas*, supra, it was said:

'The law does not have the same solicitude for corporations engaged in giving indemnity bonds for profit as it does for the individual surety who voluntarily undertakes to answer for the obligations of another. Although calling themselves sureties, such corporations are in fact insurers, and in determining their rights and liabilities the rules peculiar to suretyship do not apply.' (p. 320.)"

Thus, the court might strictly enforce a notice requirement where the surety is unpaid and thereby relieve him or her of liability. A surety for profit, however, would not be relieved of liability unless he or she had been harmed by the delay.

In 1980, *McCurley* was recalled and reaffirmed and the following excerpt quoted from that opinion: " 'The breach of a condition precedent in a bond given by an insurer for pay will not relieve the insurer from liability for any loss for which he would otherwise be liable unless such breach contributed to the loss.' 92 Kan. at 58." *Local No. 1179 v. Merchants Mutual Bonding Co.*, 228 Kan. 226, 230, 613 P.2d 944 (1980).

This court recently engaged in a thorough examination of the subject in *First Hays Banshares, Inc. v. Kansas Bankers Surety Co.*, 244 Kan. 576, 769 P.2d 1184 (1989). There, the bond issuer contended that, as a surety rather than an insurer, it had an independent subrogated right of action against the defalcating individual. It relied on *Home life Ins. Co. v. Clay*, 11 Kan. App. 2d 280, 719 P.2d 756, *rev. denied* 239 Kan. 693 (1986), and *Western Surety Co. v. Loy*, 3 Kan. App. 2d 310, 594 P.2d 257 (1979). The court concluded that neither case supported the argument. In rejecting the argument, the court stated:

"Other Kansas cases support the conclusion that a fidelity blanket bond, such as that present in this case, creates an insurance relationship rather than a suretyship. In *Ronnau v. Caravan International Corporation*, 205 Kan. 154, 468 P.2d 118 (1970), this court noted that a fidelity bond is 'an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from the want of integrity, fidelity or honesty of employees or other persons

holding positions of trust.' 205 Kan. at 159. In *Docking v. National Surety Co.,* 122 Kan. 235, 240, 252 Pac. 201 (1927), this court noted that a fidelity bond is 'in effect, a contract of insurance.'

"We find other courts are in general agreement. A fidelity bond 'is basically a contract of insurance and indemnity rather than a contract of suretyship.' *Arlington Trust Co. v. Hawkeye-Security Ins. Co.,* 301 F. Supp. 854, 859 (E.D. Va. 1969). In *Bank of Acworth v. Firemen's Ins. Co. of Newark, N.J.,* 339 F. Supp. 1229 (N.D. Ga. 1972), the court rejected a contention by the defendant that the type of fidelity bond known as a banker's blanket bond created a suretyship relationship[.]

. . . .

Applying Kansas law, the United States District Court for the District of Kansas defined a banker's blanket bond as an insurance contract in *Kan. State Bank & Trust v. Emery Air Freight,* 656 F. Supp. 200, 202 (D. Kan. 1987). Citing the decision of this court in *Ronnau,* 205 Kan. at 154, a federal district court has stated: 'Although there is authority for defendant's position that a fidelity bond purchased by a corporation to protect itself from financial wrongdoing by its employees is a matter of suretyship . . . [,] the more persuasive view, and that adopted in recent cases and commentaries, is that a fidelity bond should be treated as insurance.' *Luso-American Credit Union v. Cumis Ins. Soc.,* 616 F. Supp. 846, 848 (D. Mass. 1985)." 244 Kan. at 580-81.

The clear answer that emerges from this court's decisions is that a fidelity bond is a "[c]ontract of fidelity insurance." Black's Law Dictionary 624 (6th ed. 1990).

Notice of Loss/Proof of Loss. Discerning a clear answer whether a distinction between a notice and a proof of loss should be a deciding factor in this case is more challenging. The federal district court treated FDIC's blurring of that distinction as if it were contrary to Kansas case law, but examination of the cases relied on suggests that the significance of a "demarcation" was overstressed by the federal court. The three cases cited by the federal court for the proposition that "Kansas courts have not extended the notice-prejudice rule to cover noncompliance with proof of loss provisions in insurance contracts" are *Lyon v. Kansas City Fire & Marine Ins. Co.,* 176 Kan. 411; *Brown v. Great American Ins. Co.,* 170 Kan. 281, 224 P.2d 989 (1950); and *Bowling v. Illinois Bankers Life Ass'n,* 141 Kan. 377, 41 P.2d 1012 (1935). See 923 F. Supp. at 1407.

*Bowling* was an action for disability benefits under a life and accident insurance policy. The insured became paralyzed after he drank toxic liquor in March 1930. The policy contained the following provision:

" 'Proof of death or disability of the insured must be furnished the Association at its home office upon forms furnished by the Association within six months after the death of the insured or the commencement of the total and permanent disability. No action at law or in equity shall be maintained on any policy of insurance issued by this Association or recovery had unless such proof be so filed . . . [.]' " 141 Kan. at 378.

In its answer, the insurance company set up the defense that Bowling, by waiting until October 1932 to submit his proof of disability, had failed to comply with this contract provision. Bowling countered by alleging that he submitted his proof of disability shortly after learning that he would be permanently disabled and that the insurer had waived the time requirements of the policy by requesting that the claimant undergo and bear the expense of medical examination and furnish additional information. Among the questions submitted for jury determination were when Bowling learned that he was permanently disabled and whether the insurer waived the time requirement. The jury returned a verdict for Bowling. On appeal, the court called Bowling's account of when he realized his disability was permanent "a transparently self-serving averment." 141 Kan. at 382. His waiver argument received an equally cold reception. The court overturned the jury's verdict. 141 Kan. at 385. It does not appear that Bowling ever argued that the insurer must show prejudice due to delay in reporting the disability. Nor did the court, which showed no inclination to aid the jake-legged claimant, raise the question.

*Brown* was an action to recover under an insurance policy for loss of an automobile by theft. Brown was a used car dealer. On March 3, 1948, while the policy was in force, he sold the car and received in payment a check which was not honored. The car was never recovered. In March 1949, Brown submitted a proof of loss. A provision of the policy required that a proof of loss be filed within 60 days of the loss. The trial court held that Brown was barred from recovering due to his failure to comply with the policy pro-

vision. 170 Kan. at 282. Even though Brown did not plead waiver, the court's analysis centered on it, and the court concluded that Brown's "evidence failed to disclose a waiver of the policy provision for filing proof of loss within sixty days from occurrence of the loss." 170 Kan. at 286. With regard to the insurer's position, the court stated:

"The gist of appellee's argument is that the purpose of provisions for notice and proof of loss is to allow the insurer to form an intelligent estimate of its rights and liabilities and to afford it an opportunity to investigate to prevent fraud upon it (citing 29 Am. Jur. 824); that reasonable provisions requiring notice of loss and proof of loss are enforceable and binding (citing *La Harpe Farmers Union v. United States F. & G. Co.*, 134 Kan. 826, 8 P.2d 354, and *Bowling v. Illinois Bankers Life Ass'n*, 141 Kan. 377, 41 P.2d 1012) (see also *Mayse v. Insurance Co.*, 117 Kan. 662, 232 Pac. 865) and that while there may be waiver of proof of loss by the company in certain situations such as pertained in *Winchel v. National Fire Ins. Co.*, supra, relied on by appellant, that under the facts disclosed by plaintiff's evidence there was no waiver, and, inferentially, that appellant did not think so for as a matter of fact he did file a proof of loss in April of 1949 or something over a year after the loss occurred, *a time too late for the company to make an effective effort to trace and recover the automobile.*" (Emphasis added.) 170 Kan. at 285-86.

In other words, the insurance company was prejudiced by Brown's delay in submitting a proof of loss.

*Lyon* is another action on an insurance policy to recover for the loss of an automobile on the theory it was lost by theft. The terms of the policy required sworn proof of loss within 60 days. The required proof of loss was never made. The case was tried to the court, which found that the claimants "did not establish waiver of proof of loss and that [insurer] was not estopped to deny liability by reason of failure to make the required proof." 176 Kan. at 415. This would appear to be another instance in which prejudice to the insurer due to the claimant's noncompliance with a reporting requirement was taken into account by the court.

The question of whether to extend application of the notice-prejudice rule from notice of loss to proof of loss provisions was neither raised nor considered in the cases cited by the federal district court for the proposition that "Kansas courts have not extended the notice-prejudice rule to cover noncompliance with

proof of loss provisions in insurance contracts." 923 F. Supp. at 1407. It also is apparent that prejudice to the insurer on account of delay in the insured's filing *proof* of loss is a factor in the court's consideration. Thus, we find nothing in these cases from which it reasonably may be inferred that the court regarded prejudice as relevant to delay of a notice of loss but not to a proof of loss.

We acknowledge that the majority of cases deals with late notice of loss rather than proof of loss. The relative merits of prejudice requirements for breaches of notice and proof provisions were discussed in *ACF Produce, Inc. v. Chubb/Pacific Indem. Group*, 451 F. Supp. 1095 (E.D. Pa. 1978). There, the court considered whether to apply the analysis that resulted in the notice-prejudice rule to proof of loss. Declaring "[t]his inquiry need not detain us long," the court unhesitatingly extended the prejudice requirement to proof of loss clauses. 451 F. Supp. at 1098. Moreover, it suggested that a "proof-prejudice" rule might be even more apt than a notice-prejudice rule:

"Both clauses are designed to permit the insurer an opportunity to investigate the nature and extent of the claim against it. Indeed, '[l]ate filing of a notice claim is not . . . "wholly analogous" to late filing of proof of loss, as prejudice is more likely to result to an insurer which has no notice at all of a claim.' *Morningstar v. INA*, 295 F. Supp. 1342, 1346 (S.D.N.Y. 1969)." 451 F. Supp. at 1099.

From the insurer's perspective, notice of loss could be more critical. It would trigger an investigation, and delay might hamper a thorough independent investigation. Proof of loss provides a basis for payment, and delay in furnishing proof might simply delay payment. Thus, it is sensible that an insurer's denying coverage for breach of a proof provision would be tempered by a prejudice requirement.

National Union spells out several reasons for not applying the notice-prejudice rule to proof of loss requirements. For the most part, these reasons are newly formatted reiterations of contentions already considered.

National Union argues again that notice of loss cases and proof of loss cases constitute two separate and distinct lines of authorities, the latter line governed by the principle that proof of loss requirements are conditions precedent to recovery. With respect to the

line of proof of loss cases, National Union cites *McCurley* on the early end and *Miner* on the recent end as standing firmly for the "condition precedent rule relating to proofs of loss." Neither case lends much support to the insurer's cause. The concern in *Miner* is with proof of loss as a condition precedent to filing a lawsuit. Besides *McCurley*'s involving notice rather than proof, the court concluded that the breach of a condition precedent by the insured did not relieve the insurer of liability for loss unless the breach contributed to it. 92 Kan. at 58. In other words, a condition precedent, contrary to National Union's contention, need not be enforced. A treatise relied on by National Union further discredits the insurer's notion that coverage under an insurance policy absolutely depends on satisfaction of a condition precedent:

"Conditions in contracts are not legally essential. But in insurance contracts, conditions are very important and are in every form of insurance contract. The insured event is the primary condition with innumerable subordinate conditions concerning the risk, payment of premiums, proof of loss, giving of notice, cooperation and assistance conditions, and so on. The difference between a promise and a condition should be noted. A promise imposes an affirmative obligation the breach of which gives another a right to sue for damages or other relief. Conditions are usually precedent to that duty and must occur to trigger or activate the duty contained in the promise. A condition is a shield, not a sword. For instance, despite the many acts to be done by the insured under a fire insurance policy, the fire contract is a unilateral contract. The condition precedent to its formation is that the applicant complete and submit the application together with the initial premium. Once the fire insurer accepts those acts and issues the fire policy, a unilateral contract is formed, that is, an act for a promise. It is a reverse unilateral contract in that the applicant's acts of performance induce insurer's promise. Customarily, all forms of insurance are presumed to be unilateral contracts. Therefore, after the insured has paid the premium, only the insurer is legally bound (by its promises) to do anything.

"The notice requirement will serve as an example here for illustrating how courts decide issues regarding compliance with express conditions precedent. . . .

"Policy provisions respecting notice of loss, injury or suit should be reasonably construed, so as to conserve the true purpose of their presence in the contract. It has also been stated that such provisions should be liberally construed in favor of the insured. The insured's obligation to give written notice to the company is, of course, deemed to be independent of his duty under the cooperation clause. *Reasonable* notice in accordance with the policy terms is generally considered a condition precedent to any liability on the part of the insurer. So if the insurer does not receive notice at all, or it is long delayed, it *may* be relieved of liability

under the policy." (Emphasis added.) 1 Holmes' Appleman on Insurance 2d § 4.30, pp. 541-43 (1996).

National Union also argues that its policy is a claims-made policy and that the notice-prejudice rule cannot be applied to a claims-made policy without impairing its function. National Union contrasts a claims-made policy, which covers losses that are claimed during the policy period, with an occurrence policy, which covers losses that occur during the policy period regardless when the claim is made. It likens the discovery policy at issue in the present case with a claims-made policy in that the policy applies to losses discovered during the policy period and permits claims to be made up to 6 months after expiration of the period.

FDIC points out that in *Phico Ins. Co. v. Providers Ins. Co.*, 888 F.2d 663 (10th Cir. 1989), the Tenth Circuit Court of Appeals applied Kansas law in applying the notice-prejudice rule to a claims-made policy. One of the provisions in the policy issued by Providers "stated that a claim must be made during the policy period, and that a claim is made only by submitting to Providers *written notice* of the accident." 888 F.2d at 664. The day after the accident, the insured "phoned the claims manager of Providers and advised of the accident. The claims manager opened a file on the case, set a reserve of $50,000 and contacted a claims investigator to commence an investigation of the accident." 888 F.2d at 664. An investigation was conducted by the insurer, and a four-page report of the accident was prepared. The insurer never notified the insured that it required written notice of the accident. In a dispute with the excess carrier, Providers sought to avoid responsibility for primary coverage on the ground that the insured failed to file a written claim as required by the policy. Even in a dispute between insurers, the court applied the maxim that "[p]olicy provisions respecting notice of claim or occurrence should be liberally construed in favor of the insured." 888 F.2d at 668 (citing 8 Appleman, *Insurance Law and Practice* § 4731, pp. 6-7 [1981]). The court's discussion continues:

"Thus, many courts apply the rule that, in the absence of an express forfeiture clause, if the insured gives the insurer timely and adequate notice, even though not submitted in writing or in keeping with policy terms, it is the obligation of

the insurer to show actual prejudice for denial of coverage. 13 A., G. Couch, *Insurance,* §§ 49:49, 49:50 (2nd Ed. 1981); *Beeler v. Continental Casualty Co.,* 125 Kan. 441, 265 P. 57 (1928); *Security National Bank of Kansas City, Kansas v. Continental Insurance Co.,* 586 F. Supp. 139, 150 (D. Kan. 1982); *Travelers Insurance Company v. Feld Car & Truck Leasing Corp.,* 517 F. Supp. 1132, 1135 (D. Kan. 1981). In the instant case, while there was a 'condition precedent' section in the Providers' policy, there was no forfeiture clause. Forfeitures of insurance policies are disfavored in Kansas and should be permitted only when expressed in clear and unmistakable terms. *Bingham's Estate v. Nationwide Life Insurance Company of Columbus, Ohio,* 7 Kan. App. 2d 72, 638 P.2d 352, *affirmed and modified,* 231 Kan. 389, 646 P.2d 1048 (1981). In *Local No. 1179 v. Merchants Mutual Bonding Co.,* 228 Kan. 226, 613 P.2d 944 (Kan. 1980), the court held that the failure of the obligee to give notice of the principal's default in strict compliance with the terms of the bond did not relieve the surety of liability where the failure to notify resulted in no actual loss or prejudice to the surety. Thus, the question of prejudice to Providers is material." 888 F.2d at 668-69.

FDIC also resists the idea that the bond involved in this case can be compared to a claims-made policy. It refers the court to a discussion of the issue in *Resolution Trust Corp. v. Moskowitz,* 868 F. Supp. 634, 637 (D.N.J. 1994). The federal court noted the distinguishing features of claims-made and discovery policies and concluded that the latter "cannot be construed as a 'claims-made' policy." 868 F. Supp. at 638. Not only is the fidelity bond a discovery policy, but also it is a banker's blanket bond, the history of which "confirms that it is a totally different form of insurance from 'claim-made' [*sic*] insurance." 868 F. Supp. at 638. In addition, the federal court concluded that the notice-prejudice rule would be applied to notice of loss requirements in discovery policies. 868 F. Supp. at 639. With that issue decided, the court moved on to the question which occupies this court—whether the notice-prejudice rule would be applied to proof of loss provisions in a discovery policy. It examined a large pool of decisions from federal and state courts nationwide before concluding that the notice-prejudice rule also would be applied to proof of loss requirements in discovery policies. The court found the reasoning of *Hospital Support Services Ltd. v. Kemper Group Inc.,* 889 F.2d 1311 (3d Cir. 1989), persuasive, and it examined the basis for requiring an insurance company to prove prejudice before denying coverage:

"First, the Court recognized that because the notice provision of standard-form insurance policies were neither negotiated nor bargained for, an insurance company must 'provide a sound reason' before it can deny coverage. *Id.* at 1313 (citations omitted). Second, the Circuit Court recognized that the purpose of notice provision is to 'give the insurer the opportunity to acquire, through adequate investigation, full information about the circumstances of the case.' *Id.* (quoting *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 74, 371 A.2d 193, 197 (1977)). The Third Circuit recognized that since the purpose of the notice provision is to prevent the insurance company from being prejudiced, it only makes sense to require the insurance company to prove prejudice before denying coverage. *Id.*" 868 F. Supp. at 641.

The court, in *Resolution Trust Corp.*, concluded:

"Since the purpose of the proof of loss provision, like the notice provision, is to enable the insurance company to investigate and pay the claim without prejudice, it only makes sense to require the insurance company to prove prejudice before denying coverage based [on] the late filing of a proof of loss." 868 F. Supp. at 641.

Among the state cases it cites is *Home Life Ins. Co. v. Clay*, 11 Kan. App. 2d 280, 719 P.2d 756, *rev. denied* 239 Kan. 693 (1986). Interestingly, National Union relies on *Home Life Ins. Co.* for requiring strict compliance with notice provisions in fidelity bonds covering employee theft "because prejudice from the failure to give the required notice is to be presumed from the types of claims that would be filed." In that case, Home Life Ins. Co. filed suit against its employee Dean Clay and his bank, alleging that Clay forged endorsements on checks belonging to Home Life and deposited them into his account with the bank. The theory of recovery against the bank was conversion. The bank filed third-party claims against its bonding companies. Counsel for Home Life met with the bank president to discuss the matter in June 1980. In January 1982, Home Life filed the action against Clay and the bank. At that time, the bank first notified its bonding companies of the matter. A bond provision required notice to be given "as soon as practicable." 11 Kan. App. 2d at 284. Regardless of its failing, the bank argued in *Home Life*, the carrier should not be relieved of liability on the bond. The Court of Appeals agreed, holding:

"However, even if such notice is presumed to be a condition precedent, *McCurley* and *Travelers Ins. Co.* indicate that a failure to satisfy the condition does not bar

coverage unless the insurer can show prejudice. Therefore, bearing in mind the precedent represented by *McCurley* and the reasoning expressed in *Travelers Ins. Co.*, we conclude that a failure to provide a compensated surety with timely notice of loss will not relieve the surety from liability on its bond unless the surety can show that it was prejudiced by the untimeliness." 11 Kan. App. 2d at 288-89.

The following excerpt from *Home Life* centers on presuming prejudice:

"There are a number of . . . older cases cited by Reliance in which the effect of untimely notice is touched upon. However, the cases in which untimely notice was permitted to defeat a claim for liability involve situations in which prejudice could be assumed from the type of insurance and notice required (*Mayse v. Insurance Co.*, 117 Kan. 662, 232 Pac. 865 [1925] [hail damage to crop must be immediately assessed because likelihood other causes can result in same damage; delay presumed prejudicial]), or in which the issue of prejudice was not discussed in the opinion. *La Harpe Farmers Union v. United States F. & G. Co.*, 134 Kan. 826, 8 P.2d 354 (1932). For example, in *La Harpe*, the court held that a provision in a bank's fidelity bond requiring notice of loss as soon as possible was a valid provision. However, the court went on to hold that there were insufficient averments in the petition to bring the loss within the coverage provided by the bond in the first place. Thus, disposal of the case by demurrer was upheld without consideration of whether the absence of timely notice was alone sufficient to defeat liability. Finally, it might also be noted that the situation in *La Harpe* was one in which the loss was occasioned by the dishonesty of a bank employee. By failing to give timely notice to the surety after discovery of the loss, the surety's recourse against the dishonest employee might have presumptively been prejudiced. This is a different situation than that which arises when the insurer will be in the position of defending against the claim of a third party instead of that of its own insured. When the insured sustains a direct loss, the insurer's only recourse is against the thief. However, when the loss will result from liability owed a third party, the insurer is only prejudiced if its ability to defend against that imposition of liability is diminished by the delay." 11 Kan. App. 2d at 288.

It is obvious that the Court of Appeals' discussion on which National Union relies is dicta and nothing more. It may also be noted that a presumption of prejudice would not be appropriate in the circumstances of the present case where the bond issuer was notified of the loss within a fairly short time of its discovery. Here, it is the failure to provide timely proof of the loss that is at issue.

Another reason urged by National Union for not applying the notice-prejudice rule to proof of loss requirements is to prevent "fraudulent 'discovery' of losses at the eleventh hour of the policy."

National Union contends that holding the insured's feet to the fire on the proof of loss time requirement will keep the insured from giving notice of discovery of a loss when there is a mere suspicion of a loss during the policy period. In the policy at issue, "discovery" is defined as follows:

" 'This bond applies to loss discovered by the Insured during the Bond Period. Discovery occurs when the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

" 'Discovery also occurs when the Insured receives notice of an actual or potential claim in which it is alleged that the Insured is liable to a third party under circumstances which, if true, would constitute a loss under this bond.' "

The possibility that the insurer might deny coverage on the ground the "discovery threshold" had not been crossed during the policy period would seem to be a more direct and effective deterrent to "fraudulent discovery" than strictly enforcing a proof of loss provision.

Both parties contend that the modern trend favors them. Based on the authority cited by the parties, it appears that FDIC has the better position on this question.

National Union confines the authorities it relies on to *Travelers Ins. Co. v. Feld Car & Truck Leasing Corp.*, 517 F. Supp. 1132, 1134 (D. Kan. 1981), and 1 Holmes' Appleman on Insurance 2d § 4.30, pp. 543-44. National Union's citation of *Travelers* is most notable in that its holding seems to support FDIC's position rather than National Union's. The issues were whether the notice of the accident to the insurer " 'was as soon as practicable' " and whether the insurer needed to show prejudice due to late notice. 517 F. Supp. 1132. As in *Phico*, the dispute was between two potentially liable insurers. Because notice of the accident did not reach one of the insurers until 4 ½ years later, the federal district court found that it was not as soon as practicable. 517 F. Supp. at 1133. On the question of prejudice, the court's analysis begins from the premise, as stated by National Union, that "[a] majority of the state courts follow the rule that prejudice is immaterial and that notice as soon

as practicable of an occurrence giving rise to a possible claim is a condition precedent to an insurer's liability." 517 F. Supp. at 1134. For this proposition, the federal district court cited a 1965 treatise. Immediately after stating the majority rule, the court moved on to discuss developments in the law:

"However, a strong trend exists among the courts to shun technical interpretation of these notice provisions in order to avoid forfeiture of insurance coverage unless the insurer has been materially prejudiced because of late notice. Travelers has cited the case of *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977), which is not the seminal case of this trend although it has often been relied on by state courts adopting the requirement of prejudice. In *Brakeman*, the Pennsylvania Supreme Court abandoned traditional rules of interpreting these notice provisions and gave the following rationale:

'The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can "bargain" is the monetary amount of coverage.'

*Id.* 371 A.2d at 196. . . .

"A second basis given by the Pennsylvania Supreme Court for requiring proof of prejudice was a concern for avoiding a forfeiture whenever reasonably possible. The Pennsylvania Court reasoned that when a carrier sought to deny coverage already paid for by premiums, the insurance carrier ought to be required to show a sound reason for doing so because of late notice. *Id.*, 371 A.2d at 197, citing *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 93-94, 237 A.2d 870, 873-74 (1968). Although the Kansas Supreme Court has not explicitly stated a policy of avoiding forfeitures whenever reasonably possible, we feel such a policy underlies the numerous Kansas decisions holding that insurance policies are to be strictly construed against the carrier and in favor of the insured when a policy provision is ambiguous. *See, e.g., Brown v. Combined Insurance Company of America*, 226 Kan. 223, 232, 597 P.2d 1080 (1979); *Fancher v. Carson-Campbell, Inc.*, 216 Kan. 141, 146, 530 P.2d 1225 (1975); *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 80, 483 P.2d 1072 (1971).

"The fundamental purpose for requiring an insurance company to receive early notice of an occurrence which may possibly give rise to a claim is that prompt notice will afford the carrier an opportunity to investigate the occurrence and

thereafter properly dispose of any claim through settlement or defense of the claim. Consequently, the notice requirement helps to protect the carrier against fraudulent and otherwise invalid claims. 13 G. Couch, Insurance § 49:2 (2d ed. 1965). In other words, the purpose for the notice requirement is to protect the insurance carrier from having its interests prejudiced. *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193, 197 (1977).

"However, when an insurance carrier's interests have not been materially prejudiced because of late notice, the purpose for the notice requirement is nonexistent. It would thus be neither fair nor logical for an insurance carrier to avoid responsibility when its interests have not been prejudiced by late notice. As a general rule, the determination of whether material prejudice exists would be a fact question. 13 G. Couch, Insurance § 49:50 (2d ed. 1965); *see also, Beeler v. Continental Casualty Co.*, 125 Kan. 441, 265 P. 57 (1928).

"[W]e are assured that our decision requiring a showing of material prejudice before a carrier can deny coverage, although possibly the minority rule, represents the better-reasoned line of cases and the trend among the states today." 517 F. Supp. at 1134-35.

Having decided that prejudice was material, the federal district court considered which party should have the burden of proof. Continuing to rely on the Pennsylvania case, *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977), the court concluded that the insurer should bear the burden. The Pennsylvania court reasoned that the carrier should because it "sought to work a forfeiture by disclaiming its liability under the policy" and because an insurance policy is a unilateral contract. 517 F. Supp. at 1136.

Each of the many cases cited by FDIC as representative of the modern trend does stand for the proposition that an insurer cannot avoid liability solely on the basis of the insured's failure to comply with time requirements for proof of loss. Because the reported decisions date from as early as 1932, however, it may be a stretch to characterize them as part of a modern trend. Nonetheless, a number of the cases are fairly recent and the reasoning of some contain references to a shift toward allowing recovery unless the insurer was prejudiced by the insured's failure to file or delay in filing a proof of loss.

A brief review of some of the cases cited by FDIC will serve to illustrate several different approaches that produce the same result. In *Wells Fargo Business Credit v. Amer. Bank of Comm.*, 780 F.2d

871 (10th Cir. 1985), New Mexico law applied so that the standard was substantial compliance with notice and proof of loss requirements. In *Fidelity S. & L. Ass'n v. Aetna Life & Cas. Co.*, 647 F.2d 933 (9th Cir. 1981), California law, which does not require strict compliance with a proof of loss deadline absent a showing that the insurer was prejudiced by the delay, was applied. Michigan law, which was applied in *William H. Sill Mortgages, Inc. v. Ohio Casualty Ins. Co.*, 412 F.2d 341 (6th Cir. 1969), does not allow coverage to be avoided for noncompliance with a provision for filing proof of loss unless there is a provision in the bond that invalidated or voided it on that basis. Ohio law entitles the insured to a reasonable time to discover the extent and amount of its loss, including a considerable time for investigation and ascertainment in a complicated case. *Russell Gasket Co. v. Phoenix of Hartford Ins. Co.*, 512 F.2d 205 (6th Cir. 1975). The standard applied by New Jersey courts in determining whether an insurer can avoid liability on the ground that the insured has failed to perform a condition precedent is whether the insurer has shown a likelihood of appreciable prejudice as a result of the insured's failure. *Gladstone v. Fireman's Fund Ins. Co.*, 536 F.2d 1403 (2d Cir. 1976). The Mississippi rule is that relief from liability will not be given the insurer where the bond does not specify that consequence from the insured's noncompliance with notice provisions. *Hartford Acc. & Indem. Co. v. Hattiesburg Hdw. Stores*, 49 So. 2d 813 (Miss. 1951).

In summary, we find the better-reasoned case can be made for requiring prejudice than not. Given that insurance contracts are not negotiated agreements, no compelling reason appears for allowing the insurer to avoid performing a duty purchased by the insured's premium unless the insured's delay caused loss to the insurer. This would be true for both notice of loss and proof of loss provisions in the policy or bond. Thus, we conclude that an insurer must prove prejudice before denying coverage based on a late filing of proof of loss.

On the facts submitted to the court in this case, we answer the certified question: No.