**WEST AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**Lawrence P. KING, Jr.; Jeanette K. King; and Greenwood Trust Co., by its servicing agent Novus Services, Inc., d/b/a Discover Card, a corporation, Defendants.**

No. 97–1272–JTM.

United States District Court, D. Kansas.

June 23, 1998.

Jeffrey L. Willis, Craig Kennedy, Johnson, Kennedy, Dahl & Willis, Marc A. Powell, Powell & Brewer, LLP, Wichita, KS, for Plaintiff.

Jay F. Fowler, Timothy B. Mustaine, Martha Aaron Ross, Foulston & Siefkin L.L.P., Wichita, KS, for Defendants.

## MEMORANDUM ORDER

MARTEN, District Judge.

West American Insurance Company brought this foreclosure action in the District Court of Cowley County, Kansas, against Lawrence P. King, Jeanette K. King, and Greenwood Trust Company. The Kings removed the action to this court and asserted a counterclaim for breach of an insurance contract.

According to the pleadings, the mortgage and note on the Kings' house in Winfield had been assigned to West American. The property was heavily damaged in a fire. West American claims the Kings defaulted on the note and subsequently filed for bankruptcy. West American obtained relief from the automatic stay in order to bring this foreclosure action.

The Kings removed, answered and counterclaimed, alleging West American provided fire insurance for the property and had failed to provide coverage for the damage caused by the fire. The Kings also claim West American was contractually obligated to pay the note and real estate mortgage. West American claims there was no coverage under the policy because the Kings intentionally caused the damage to the property (by arson) and failed to comply with other terms of the policy. West American also asserted defenses based on waiver, estoppel and laches.

The Kings move for partial summary judgment on West American's defenses based on Mr. King's alleged failure to comply with certain policy provisions, and the waiver, estoppel and laches defenses. The court finds a hearing on this matter is not necessary. The Kings' motion for partial summary judgment is granted for the reasons that follow.

## I. Summary Judgment Standard.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to show that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the initial showing has been made, the burden shifts to the non-moving party to designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A party may not rely on the allegations of its pleadings but must establish the existence of a genuine issue of material fact through admissible evidence. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied*, 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). When determining whether there is a material issue of fact, the nonmoving party's evidence is to be believed; all justifiable inferences are to be drawn in its favor; and its nonconclusory version of any disputed issue of fact is assumed to be correct. *Multistate Legal Studies, Inc. v. Harcourt Brace Publ., Inc.*, 63 F.3d 1540, 1545 (10th Cir. 1995), *cert. denied*, 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996).

II. Facts.

The following factual scenario is based on the assertions of the parties, where undisputed or supported by citations to admissible evidence and with all reasonable inferences drawn in West American's favor. The parties insert legal conclusions in their statements of fact, which were ignored.

In 1995, West American insured the Kings' residence located at 2908 Lake Shore Drive in Winfield, Kansas. The policy covered damages caused by fire, including damage to personal property. However, the policy expressly excluded coverage for intentional losses.

The definitions section of the policy contains the following language:

In this policy, 'you' and 'your' refer to the 'named insured' in the Declarations and the spouse if a resident of the same household.

Mr. King was the named insured in the Declarations.

Section One of the policy provides in part as follows:

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

. . . . .

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts, and related documents that justify the figures in the inventory;

. . . . .

g. Send to us, within 60 days of our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property as described in **2.e.** above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of the loss.

On May 11, 1995, the residence was damaged by a fire. That same day, West American received notice of the fire and resulting damages. West American contends the loss was caused by arson.

West American mailed a reservation of rights letter to Mr. King on May 19, 1995, six business days after receiving notice of the fire. West American mailed a proof of loss form to Mr. King on June 1, 1995, more than 10 business days after receiving notice of the fire. West American asked Mr. King to fill out the form in an accompanying letter.[1]

Mrs. King filled out and signed the proof of loss statement. The statement did not set forth a specific dollar figure for the damages and was not accompanied by a personal property inventory. Mrs. King indicated on the form that the amount of the damage to the buildings and the personal property lost in the fire had not been determined. The proof of loss was received by West American on July 17, 1995.

In a letter dated August 18, 1995, West American notified Mr. King that the proof of loss submitted by Mrs. King did not satisfy the policy provisions because Mr. King was the named insured. The letter indicated the Kings' claim would not be considered until Mr. King submitted a proof of loss statement. Mr. King did not submit a proof of loss statement.[2]

---

1. West American failed to cite admissible evidence on this point. However, in reply the Kings do not dispute this assertion. The Kings object that it is not relevant.

2. West American asserts that Mr. King refused to submit a proof of loss statement because he was concerned about being prosecuted for arson. Mr. King's motive, while relevant to other issues at trial, is not relevant to the issues raised by the summary judgment motion.

West American admits the failure of the Kings to submit a personal property inventory was not a factor in the decision to deny coverage. During discovery in this lawsuit, the Kings prepared an inventory of personal property damaged in the fire. While describing the document as "[n]ot complete," Randall Dopp, the claims supervisor for West American, indicated the list was "an inventory that would work."

In response to an interrogatory, West American explained the basis for its defenses of waiver, estoppel, and laches as follows:

Mr. and Mrs. King abandoned their claim in 1995 by not responding to the letter dated August 18, 1995 from West American/Ohio Casualty and by not pursing a claim. In fact, no action was taken by either insured after July 14, 1995, to the best of plaintiff's knowledge. Plaintiff relied on the defendants [sic] abandonment by not conducting any further investigation. If defendants would have pursued a claim by complying with policy conditions, plaintiff would have conducted additional investigation including examinations under oath and tape recorded statements of key witnesses. This investigation would have occurred while events were easily remembered and fresh in the witnesses [sic] mind. Furthermore, an examination under oath from Mr. King shortly after the fire loss might have resulted in material information. The Kings took no additional action until approximately two years later when on June 19, 1997, their attorney filed a counterclaim for over $1 million in insurance coverage. Plaintiff has been prejudiced by the delay of the defendants in pursuing a claim.

Dopp could not recall any action by the Kings which frustrated or impeded West American's investigation in any way.

III. Analysis.

The Kings seek summary judgment on the following defenses to their counterclaim for breach of an insurance contract: (1) failure to provide a proof of loss statement; (2) failure to provide a personal property inventory, which is part of the proof of loss statement; and (3) waiver, estoppel and laches.

A. Proof of Loss Statement.

The Kings argue that the defense of failure to submit a proof of loss statement is (1) barred by K.S.A. 40–924 because the West American failed to provide a proof of loss form within 10 days of notification of the loss; and (2) inapplicable because Mrs. Kings proof of loss statement constitutes actual or substantial compliance. K.S.A. 40–924 provides as follows:

**Proof of loss by fire or tornado; insurer to furnish blanks and directions.** In case of destruction or damage of property by fire or tornado where the same is insured against fire or tornado, it shall be the duty of the insuring company or companies, within ten days after receiving notice thereof and upon written request, to furnish to the insured proper blanks upon which to make the required proof of such loss with full directions as to what proof is required, and if any such company fails to comply with this section the failure of the insured to make proper proof of loss prior to the suit shall be no defense to a suit upon the policy, and in all cases the insured shall have a reasonable time in which to make such proof after the blanks and directions are received: Provided, however, that the furnishing of such blanks and directions shall in no wise be construed as an admission of liability by the insuring company or companies.

The Kings argue this statute requires an insurance company to provide forms within 10 days of receiving a notice of the loss. In other words, the Kings suggest that "and upon written request" should be read as "or upon written request." West American argues the statute is only applicable if an insurance company receives both a notice of a loss and a written request for a blank form. In other words, West American appears to be arguing that "and upon written request" should be read as "and only upon written request."

In *Eidemiller v. State Farm Mutual Insurance Co.*, 261 Kan. 711, 933 P.2d 748 (1997), the Kansas Supreme Court addressed the question of statutory interpretation:

Interpretation of a statute is a question of law, and it is the function of the court to

interpret a statute to give it the effect intended by the legislature. It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained.

When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be.

The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.

*Id.* 261 Kan. at 713–714, 933 P.2d 748 (citations omitted).

The court's research revealed no cases interpreting K.S.A. 40–924. The Kansas Supreme Court has given other statutes in Chapter 40, Article 9, a remedial interpretation favoring the insured over the insurance company. *See Hamilton v. State Farm Fire & Casualty Co.*, 263 Kan. 875, 953 P.2d 1027 (1998) (statutory attorney's fees are available based on the type of policy issued, not the type of loss). Similarly, the Tenth Circuit has described other provisions of Article 9 as the imposition by the Kansas legislature of "a special standard on companies insuring against fire, tornado, lightning and hail losses," *Iowa National Mutual Insurance Co. v. City of Osawatomie, Kansas*, 458 F.2d 1124, 1131 (10th Cir.1972), and as remedial in "character, intent and purpose." *Magrath v. Mechanics & Traders Insurance Co.*, 249 F.2d 98, 103 (10th Cir.1957) (predecessor to K.S.A. 40–905).

With this remedial intent in mind, the court is convinced the Kansas legislature intended to require an insurance company to provide within ten days a blank proof of loss form whenever notice of a claim is received, without waiting for a request for the form from the insured. The language "and upon written request" imposes a separate duty to provide a blank form upon written request. It is doubtful that the Kansas legislature would, as part of a remedial statutory scheme, make it easier for insurance companies to assert defenses to otherwise valid claims.

This is consistent with the policy underlying the Kansas Supreme Court's recent holding that in order to prevail on a failure to provide proof of loss defense, an insurance company must show substantial prejudice. *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Federal Deposit Insurance Corp.*, 264 Kan. 733, 957 P.2d 357 (1998).

Accordingly, West American is barred from asserting a failure to submit proof of loss defense by K.S.A. 40–924 because West American failed to provide a blank form within 10 days of being notified of the loss. As discussed below, West American has failed to establish substantial prejudice, which would bar the defense in any event. *See National Union, supra.* The court need not decide whether Mrs. King's proof of loss statement constitutes actual or substantial compliance. The personal property inventory is part of the proof of loss statement so separate analysis of this argument is not necessary.

**B. Waiver, Estoppel and Laches.**

 Waiver, estoppel and laches based on delay require a showing of actual prejudice when presented by an insurance company as a defense to paying a claim under a policy. *See National Union, supra* (discussion of delay in context of providing notice of loss and proof of loss). The insurer bears the burden of establishing prejudice. *Id.* The Kings argue West American cannot show actual prejudice from any alleged failure of the Kings to pursue their claim under the insurance policy.

 West American cites its interrogatory response. However, West American has not cited any actual problems it has encountered in conducting its defense in this case. Its claims supervisor admitted the Kings had done nothing to impede their in-

vestigation into the incident. Prejudice must be actual and not metaphysical. *Id.* (insurer must show loss is attributable to the delay).

West American argues it would have conducted a more thorough investigation shortly after the fire if it had known the Kings would pursue their claim. Even if the court accepts as reasonable West American's argument that the Kings abandoned their claim when they failed to respond to the August 18, 1995 letter, as far as West American was concerned the Kings were actively pursuing their claim for at least three months. West American does not explain why it did not conduct a more thorough investigation into the fire during this time period. West American has not cited a lack of access to the scene, unavailable or forgetful witnesses, or any other problems suggesting prejudice attributable to the Kings' alleged delay.

Furthermore, West American argues it can show the fire was caused by arson. The Kings have not moved for summary judgment on West American's defense that the damage was intentional and West American will be able to present evidence on this issue. West American has failed to establish prejudice from any alleged delay. Accordingly, the Kings' motion for summary judgment on West American's defenses of waiver, estoppel and laches is granted.