FILED
United States Court of Appeals
Tenth Circuit

March 11, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

B.S.C. HOLDING, INC.; LYONS SALT
COMPANY,

              Plaintiffs - Appellants,

v.

LEXINGTON INSURANCE
COMPANY,

              Defendant – Appellee.

No. 13-3142
(D. Kansas)
(D.C. No. 2:11-CV-02252-EFM)

**ORDER AND JUDGMENT**[*]

Before **LUCERO, TYMKOVICH,** and **BACHARACH,** Circuit Judges.

Lyons Salt Company and its sole shareholder, B.S.C. Holding, Inc., own an

underground salt mine in Kansas that suffered water intrusion.  When told about

the water intrusion, the insurer (Lexington Insurance Company) did not pay on

the policy, and Lyons and B.S.C. Holding sued to obtain a declaratory judgment

recognizing coverage for the damage and related expenses.  Lexington moved for

summary judgment, arguing that the Plaintiffs took too long to provide notice.

---

[*]      This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.  But
the order and judgment may be cited for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court agreed and granted summary judgment to Lexington, prompting the Plaintiffs to appeal. Appellant's App. vol. VII at 2230-51; *see B.S.C. Holding, Inc. v. Lexington Ins. Co.*, 947 F. Supp. 2d 1150 (D. Kan. 2013).

We reverse. Even if the Plaintiffs had taken too long, the delay would only relieve Lexington of coverage if it showed substantial prejudice. Because Lexington presented no evidence of actual prejudice, it was not entitled to summary judgment.

## The Policies' Notice Provisions

Lexington insured Lyons and B.S.C. Holding through a series of "all-risk" policies covering a broad range of losses. Appellants' App. vol. IV at 933. These policies contain a substantially similar notice provision:

> Notice of Loss. The Insured shall as soon as practicable report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim under this policy and shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

Appellants' App. vol. IV at 961.

## Discovery of the Water Inflow and Notification

In January 2008, the Plaintiffs' employees detected an inflow of water in the salt mine and feared dissolution of the salt or structural problems. As a result, the Plaintiffs tried to determine the cause and to devise a solution. In April 2010, the Plaintiffs attributed the inflow to an improperly sealed oil well

and regarded the "future of the mine [as] dire." Br. of Appellants at 9. In July 2010, the Plaintiffs notified Lexington of the water inflow.

Lexington then learned that the Plaintiffs had already spent over $2.5 million to find the cause of the water inflow and identify a solution to "prevent the physical loss of the mine." Appellant's App. vol. VI at 1505-06. The ultimate proof of loss was for $7.5 million, which included remediation measures that the Plaintiffs had undertaken before they notified Lexington of the inflow. *Id.* at 1523.

For the sake of argument, we can assume that the Plaintiffs waited too long to notify Lexington. Nonetheless, the Plaintiffs' delay would only relieve Lexington of coverage if it proved substantial prejudice. *See Nat'l Union Fire Ins. Co. v. FDIC*, 957 P.2d 357, 368 (Kan. 1998); *Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 71 P.3d 1097, 1137 (Kan. 2003) (quoting *Cessna Aircraft Co. v. Hartford Accident & Indem. Co.*, 900 F. Supp. 1489, 1515 (D. Kan. 1995)).

Under Kansas law, an insurer can show prejudice by "presenting evidence that (1) its ability to investigate the claim has been lost; or (2) opportunities to negotiate settlement have been lost; or (3) opportunities to defend have been lost." *Guardian Trust Co. v. Am. States Ins. Co.*, No. 95-4073-SAC, 1996 WL 509638, at *5 (D. Kan. 1996) (internal quotation marks omitted). But the

insurer's "generalizations about lost opportunities do not constitute a showing of actual prejudice" because "[a] rule that would recognize prejudice whenever the insurer's routine procedures were disrupted is one that improperly *presumes* prejudice simply from the insurer's lost opportunity to join and control the underlying defense." *Id*  Rather, to demonstrate prejudice, the insurer must show that "it would have handled some aspect of the investigation, discovery or defense differently and that with this change, [the insurer] likely could have either defeated the underlying claims or settled the underlying claims for a lower sum than what the insureds settled." *Id.* at *6.  Application of this test ordinarily involves an issue of fact.  *See FDIC  v. Oldenburg*, 34 F.3d 1529, 1547 (10th Cir. 1994) ("The question of prejudice arising from failure to provide timely notice is generally a question of fact.").

On this factual issue, Lexington advances three arguments for prejudice:

- It lost the opportunity to independently investigate the water inflow;

- it lost the opportunity to provide input on how to resolve the water inflow problem; and

- it suffered underwriting prejudice.

To justify summary judgment, Lexington had to support these assertions of prejudice by identifying "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believe[d] [would] demonstrate the absence of a genuine issue of material fact."  *Celotex*

4

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). If Lexington provided this support, the district court would have to view the evidence and the resulting reasonable inferences in the light most favorable to Lyons and B.S.C. Holding. *See SEC v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013).

I.     Prejudice in the Investigation

Lexington urges prejudice from a lost opportunity to investigate before the Plaintiffs began remediation. But Lexington has independently inspected the mine and fails to prove how its investigation was hampered by the delay.

Instead, Lexington argues that witnesses' memories are "'not as fresh.'" Br. of Appellee at 43. The problem is that Lexington does not identify the witnesses whose memories dimmed or explain how the stale memories impeded the investigation.

When asked whether Lexington's investigation was hampered, its corporate representative (Ossian Cooney) answered rhetorically: "How could I know?" Appellants' App. vol. IV at 1157. With this rhetorical question, the fact-finder could reasonably conclude that Lexington has not proven actual prejudice in its investigation. Thus, Lexington was not entitled to summary judgment on this issue. *See FDIC v. Oldenburg*, 34 F.3d 1529, 1547 n.21 (10th Cir. 1994).[1]

---

[1]     Though *Oldenburg* involved Utah law (rather than Kansas law), the burden and the issue were similar. In applying Utah law, we held that the insurer had to show

5

## II.    Prejudice in the Remediation

Lexington also alleges prejudice because it could not offer input to the Plaintiffs in their remediation efforts.  But Lexington does not present evidence on how this input would have affected the remedial efforts.  In the absence of this evidence, a reasonable jury could conclude that Lexington failed to prove prejudice from the inability to participate in the Plaintiffs' remediation efforts. *See Cessna Aircraft Co. v. Hartford Accident & Indem. Co.*, 900 F. Supp. 1489, 1516 (D. Kan. 1995) (Questions of fact remained on whether insurers would have handled a claim differently, and these questions precluded summary judgment on the issue of prejudice.).

## III.    Prejudice in the Underwriting Process

In addition, Lexington urges underwriting prejudice from the Plaintiffs' late notice.  According to Lexington, the delay prevented a meaningful evaluation of risk during underwriting of the renewal policies, adding that earlier notice could have led to cancellation, non-renewal, or amendment of the policies.

Lexington bears the burden to prove underwriting prejudice.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  But the record contains no evidence

---

"substantial prejudice from late notice."  *Oldenburg*, 34 F.3d at 1547.  The insurer argued that it could show prejudice by establishing the existence of steps that it could have taken that may have changed the result.  *Id.* at 1547 n.21.  We rejected this argument as incompatible with the need to show actual prejudice.  *Id.*  In doing so, we noted that the insurer's argument "would create a presumption of prejudice" in almost every case involving a late notice.  *Id.*

that Lexington would have done anything differently had the Plaintiffs provided timely notice.

## Conclusion

To prevail on summary judgment based on late notice, Lexington must demonstrate substantial prejudice. The fact-finder could infer prejudice, but could also have found the opposite. Therefore, Lexington was not entitled to summary judgment based on delay in the notice. In these circumstances, we reverse and remand with instructions to vacate the summary judgment award to Lexington.

Entered for the Court

Robert E. Bacharach
Circuit Judge